## Estate of Jacob W. Seitzinger, Deceased.   Appeal of J. C. Illig and Brother et al.

*Will—Trusts and trustees—Spendthrift trust—Separate use trust.*

A testator creates a valid spendthrift trust in favor of a daughter who is
a child at the date of the will, where he gives her share to trustees in trust
"for her sole and separate use, during her natural life, so that she may
receive the income, rents, issues and profits thereof, as and when the same
shall have accrued and become payable, with her own separate hand or as
she by her sole and separate act may direct, and so that the same shall not
be in any manner pledged, appropriated, disposed of, or parted with by
anticipation, or before the same shall have accrued and become payable,
and shall not be in any manner liable for the debts or to the interference
or control of any husband whom she may marry, or be subject to execution,
attachment, sequestration or adversary proceedings of any sort for her own
debts, or for any debts or liabilities whatever; and upon, and from and
after her decease, in trust for the use of her issue living at her death."

*Will—Power of appointment—Appointment to issue and husband.*

Where a daughter's share is given to trustees for her life, the daughter
has no power to appoint to others than her issue and surviving husband,
where the will directs that her share shall be held "from and after her
decease, in trust for the use of her issue living at her death, in such parts,
shares and proportions, or of such one or more of them to the exclusion of

another or the others, for such estate or estates, in such manner and under such trusts as she by last will and testament, or writing in nature thereof, under her own separate hand and whether married or single, and if married, notwithstanding her coverture, may have directed or appointed, . . . . and to the extent of one-half of the accruing income of her share of my estate after her death, to such provision for the use and benefits of such surviving husband during his natural life, or during his widowhood, as she may appoint or direct by last will or by testamentary act, such as aforesaid, which she is hereby empowered for that purpose to make, whether she leave issue surviving her or not."

*Intestate laws—Illegitimates—Act of April 27, 1855, sec. 3—Will.*

Where a will made in 1850 gives a life estate in trust for a daughter with power of appointment, and directs that in default of appointment the estate shall be "for the use of such person or persons, and for such estate or estates as would then be entitled to the same if she had then died, the absolute owner of the same, a widow and intestate," and the daughter dies after the passage of the act of April 27, 1855, P. L. 368, unmarried, but leaving illegitimate children, the disability of the children to inherit from their mother is removed by the act; and the fact of the inheritable capacity having been conferred by statute after the estate vested in the mother does not prejudice the right of her children to take from her.

*Trusts and Trustees — Devastavit — Attachment execution—Spendthrift trust—Will.*

Where a daughter's share is protected by a spendthrift trust, and a portion of her share is wasted by the trustee who is her brother, and the court substitutes the brother's share for that out of which he had wronged his sister, the money thus substituted becomes a part of the trust estate, and is protected against the sister's creditors.

Where a trustee has committed a devastavit, and a fund realized from his bond has been distributed to certain of the cestuis que trust, one of the cestuis que trust who did not share in the distribution is entitled to have her loss made good out of a fund subsequently accruing to the trustee personally from the estate out of which the trust estate was created.

Argued March 5, 1895.  Appeal, No. 19, Jan. T., 1895, by John C. Illig and Thomas B. Illig, trading as J. C. Illig & Brother, and others, from decree of O. C. Berks Co., overruling exceptions to adjudication.  Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.  Affirmed.

Exceptions to adjudication.

From the record it appeared that Jacob W. Seitzinger died on Nov. 19, 1850, leaving a will dated Oct. 24, 1850, the material portions of which were as follows :

"Whereas, my daughter Elizabeth, labours under an afflic-

tion which renders it necessary that particular provision be made for her welfare ; now I declare that my residuary estate real and personal, shall stand charged and chargeable during her natural life with such sum or sums of money as my executors, for the time being, may deem necessary and proper, not exceeding seven hundred dollars in any one year during my wife's lifetime, and not exceeding fifteen hundred dollars in any one year after my wife's death, to be applied to the clothing, boarding, lodging, subsistence, and expenses, including funeral expenses of my said daughter, and in payment of the compensation of such suitable persons as may from time to time, during her life, be hired to take care of her and administer to her wants ; and during my said wife's lifetime to be paid to her, my said wife, or on her receipt or order, if my executors or executor shall see proper ; and after my wife's death to the committee of my said daughter, or person or persons duly appointed by competent authority therefor, provided that such committee be not an executor of my will or an administrator of my estate. So far as this provision for my said daughter may be unexecuted at my death, I direct that any amount thereof not paid or appropriated as aforesaid, or required to carry into effect any previous appropriation or liability incurred, shall form a part of my residuary estate, my executors and the personal representatives for the time being, of my estate shall not be liable for the application or the non-application of any money paid by them to my wife or to any committee such as aforesaid.    But particularly request such representative to be watchful of the mental and bodily condition and wants of my said daughter ; and at all times to direct and superintend in a friendly manner the application of her said income.

" Upon the completion of the appraisement with or without allotment in severalty, as the case may be, I direct that my executor or executors convey and assign the respective allotments in severalty, or several and respective undivided shares as the case may be, of my final residuary estate in the manner following : That is to say, two equal twelfths to each of my said two sons respectively, and their respective heirs, two such twelfths to the trustees of each of my said daughters, Margaret Adelia's, Mary Agnes', and Emma Belinda's respective shares of my estate, one such twelfth to the trustee of the said

Mary Agnes Souder's share, and one such twelfth to the trustees to whom I have hereinbefore bequeathed eleven thousand dollars in trust, for the said Jacob Seitzinger Souder, to be held in trust for his use in the manner hereinafter declared ; provided, that the last two mentioned shares may be united in one allotment of two twelfths in severalty, if it shall by the said appraisers have been so allotted as aforesaid.

" The share of the said Margaret Adelia Jones of my estate, shall be deemed and taken to be the two adjacent tracts of land and premises in Lower Heidelberg Township, containing between one hundred and eight and one hundred and nine acres, more or less, and the two twelfths aforesaid of the said final residue.

" The share of the said Mary Agnes Souder, of my estate real and personal, shall be deemed and taken to be thirteen thousand dollars bequeathed, in trust as aforesaid, and the one twelfth aforesaid of the said final residue.

" The share of the said Jacob Seitzinger Souder of my estate, real and personal, shall be deemed and taken to be eleven thousand dollars bequeathed in trust as aforesaid, and the one twelfth aforesaid of the said final residue.

" The share of the said Mary Agnes Seitzinger of my estate, real and personal, so far as the trusts hereinafter declared are concerned, shall be deemed and taken to be the real estate conveyed to me by Joseph and Isaac Schmucker, as aforesaid, and the two twelfths aforesaid of the said final residue.

" The share of the said Emma Belinda Seitzinger of my estate, real and personal, so far as the trusts hereinafter declared are concerned, shall be deemed and taken to be the said Klopp farm and the two twelfths of the said final residue.

" The share of the said Jacob John Swift Seitzinger of my estate, real and personal, shall be deemed and taken to be three hundred and three and a half acres of land, more or less, in Cumru Township ; one hundred and ten acres, more or less, of land in Alsace Township, hereinbefore devised to him, and the two twelfths aforesaid of the said final residue.

" The share of the said Franklin Schwartz Seitzinger, of my estate, real and personal, shall be deemed and taken to be the two tracts bought by me as aforesaid, from John Beidler, and the above legacy of nine thousand dollars, and the two twelfths aforesaid of the said final residue.

" The designation in this, my will, of the said respective por-
tions, or of any portions or parts of my estate, as the shares of
my said respective children and grandchildren, is not to be con-
strued as enlarging or in any manner defining the duration or
character of their respective interests, as the same are herein-
after specified.

" The respective portions of my estate hereinbefore desig-
nated as the shares of my daughters, Margaret Adelia, Mary
Agnes, and Emma Belinda, and my granddaughter, Mary Agnes
Souder, I hereby devise and bequeath severally to the said
Richard Boone, David F. Gordon, and William Wetherill, their
heirs, executors, administrators and assigns, as joint tenants in
trust, as to the share of each respectively for her sole and sep-
arate use, during her natural life, so that she may receive the
income, rents, issues and profits thereof, as and when the same
shall have accrued and become payable, with her own separate
hand or as she by her sole and separate act may direct, and so
that the same shall not be in any manner pledged, appropriated,
disposed of, or parted with by anticipation, or before the same
shall have accrued and become payable, and shall not be in any
manner liable for the debts or to the interference or control of
any husband whom she may marry, or be subject to execution,
attachment, sequestration, or adversary proceedings of any sort
for her own debts, or for any debts or liabilities whatever ; and
upon, and from and after her decease, in trust for the use of
her issue living at her death, in such parts, shares and propor-
tions, or of such one or more of them to the exclusion of another
or the others, for such estate or estates, in such manner and
under such trusts as she, by last will and testament, or writing
in nature thereof, under her own separate hand, whether mar-
ried or single, and if married, notwithstanding her coverture,
may have directed or appointed ; and so that in case of any
partial appointment or appointments, the appointed shares or
parts shall be brought into hotchpot before the appointees shall
participate in the unappointed shares or parts ; provided, that
all or any testamentary provisions or provision, such as afore-
said, of any or either of my two now unmarried daughters or
last named granddaughters in favor of issue, as aforesaid, shall
be subject and postponed in favor of any husband who may sur-
vive her, to the extent of one-half of the accruing income of

her share of my estate after her death, to such provision for the use and benefit of such surviving husband during his natural life, or during his widowhood, as she may appoint or direct by last will or by testamentary act, such as aforesaid, which she is hereby empowered for that purpose to make, whether she leave issue surviving her or not; so, however, that any such provision for such surviving husband shall in no event be liable for his debts, and shall cease and determine if ever it should in any manner either involuntarily or through any willful act become liable therefor, and shall thereupon vest in the person or persons who would be entitled thereto if he were dead; and for want of any such testamentary directions or appointment as aforesaid, in favor of either her husband or her issue, or so far as the same if made may not extend, in trust upon and from and after her death, for the use of such person or persons, and for such estate or estates as would then be entitled to the same if she had then died, the absolute owner of the same, a widow, and intestate."

"19. My executors for the time being shall each successively have power and authority to purchase with moneys of my estate or unite with other owners of lands tenements or hereditaments of which I am or may be a cotenant in purchasing any adjacent or conterminous lands or mining privileges or other privileges or hereditaments in conterminous or neighboring lands in order to adjust or improve boundaries or to increase the facilities profits or advantages of working any mines now or hereafter opened upon any lands in which I now am or hereafter may be legally or equitably interested in severalty or in common with any other person or persons. All conveyances of lands to be so purchased or acquired shall be made to my executor for the time being and his heirs in trust for the uses intents and purposes hereinafter devised and declared of and concerning my residuary real estate, and all lands so purchased or acquired or conveyed shall be subject to the operation of this my will as if I had owned the same at the making thereof or at my decease.

"50. All the rest, residue and remainder of my estate real and personal including what may be purchased or acquired hereafter in my lifetime or after my death by my executors as aforesaid, and the reversion expectant upon my wife's death of the seventy acres of land first above mentioned, I devise and be-

queath to my executors or executor for the time being his or
their heirs executors and administrators in trust by sales pub-
lic or private or mortgages thereof, or from the rents and profits
interest and income thereof while unsold at his or their discre-
tion, at such times and in such manner as he or they may deem
proper to receive, and collect such sum or sums of money as he
or they may deem necessary for the payment of all my debts
and the discharge of all incumbrances upon my real estate and
the raising of all or any sum or sums of money that may be
required for the payment of any legacies or for any of the pur-
poses mentioned in this my will.   I direct that until the first
day of April in the year one thousand eight hundred and fifty-
six, none of my children or issue of my deceased children or of
their heirs executors administrators or representatives or per-
sons claiming under any of them, shall require of my executors
or shall be entitled in any manner to insist that any part of my
real estate shall be sold otherwise than at the discretion of my
executors for the payment of my debts, or for any other purpose
as they my said executors successively and respectively may
from time to time see proper.   If with a just regard to the rights
of creditors (which are of course to be first regarded) my execu-
tors should in their judgment and discretion conceive it more
advantageous to the probable ultimate interests of my family
that my residuary real estate or any part thereof should remain
unsold, I recommend that there be no sale of the same, but that
my executors shall out of the rents and profits interests and
income of my residuary estate support and maintain my minor
children and two children of my deceased daughter Ann Ellen
Souder during their respective minorities as hereinafter men-
tioned, and pay to the separate use of my said daughters Mary
Agnes, and Emma Belinda severally the respective annual
sums or amounts of five hundred dollars each, respectively, in
the event and in the manner hereinafter mentioned and shall
apply the net surplus of the said rents and profits interest and
income towards the payment of my debts and of incumbrances
on my real estate and of the interest or principal of any mort-
gages of my real estate which they may have executed to
secure moneys borrowed by them for the payment of my debts
under the authority hereinbefore for that purpose conferred,
provided always that no persons purchasing from or lending on

mortgage as aforesaid to my executors shall be required to see to the necessity or occasion for, or propriety or expediency of, any sales or mortgages which they may see proper to make, or to the application or appropriation of purchase or mortgage moneys; it being my will that their conveyances absolute or defeasible shall in all cases be effectual; and that their receipts and acquittances shall in all cases be final discharges. On any sale or sales of my real estate to be made as aforesaid, my executors for the time being at discretion, may reserve or not reserve any ground rent or ground rents or other rent or rents in fee simple or for any less estate, with or without clauses authorizing the redemption or extinguishment of the same, on the payment of a fixed sum or sums of money at any future time or times, and with such other clauses covenants and conditions as he may deem proper; such ground rents or other rents to be subject thereafter to sales, mortgages and other dispositions by my executor or executors for the time being in like manner as if the same had been a part of my estate at my decease.

"21. It is my will that so soon as my debts shall have been paid and all incumbrances upon my real estate discharged the whole of my remaining residuary estate real and personal shall be inventoried and appraised by three persons to be appointed therefor by my executors by deed duly acknowledged or proved; or if they should fail to make such appointment, it may be made by the Court of Common Pleas or Orphans' Court of Berks County or any Court having jurisdiction of the trusts to be carried into effect under the provisions of this my will. The aggregate value of the whole thereof having been ascertained by such appraisement there shall be deducted therefrom a sum of money equal to the aggregate amount of the proceeds of any sale or sales of specifically devised real estate hereinbefore mentioned of any wood cut from the said piece of woodland that may respectively in my lifetime have been disposed of or converted as aforesaid. I hereby direct that the respective shares of real estate of any of my children that would otherwise by reason of such dispositions of specifically devised real estate or sale of wood be deficient shall be made good by adding in that case to their respective shares of my residuary estate a sum or respective sums of money equal to the capital of such proceeds. There shall likewise be deducted from the said ag-

gregate, the sum of thirty-eight thousand three hundred dollars being the amounts of the said pecuniary legacies particularly bequeathed to my said son Franklin Schwartz, and, to or in trust for, or as parts of, the shares of my grandchildren the children of my daughter Margaret Adelia and of my deceased daughter Ann Ellen, and the said capital sum of eight thousand dollars to be set apart and invested for the purchase of a dwelling house as aforesaid, and a sufficient capital sum or amount to be invested in order to secure the annual provisions aforesaid for my wife and daughter Elizabeth."

The facts appear by the opinion of the Supreme Court.

BLAND, P. J., filed an opinion on the exceptions, which was in part as follows:

. "The estate of this decedent having failed to pay the interest on the dower of Margaret A. Jones after April 1, 1864, demand has been made here for interest on the arrears of annual interest from the time the annual payments fell due. The claim for interest on arrears of interest was not made at the audit before the original adjudication was filed, but is now seriously pressed upon the authority of Stewart v. Martin, 2 Watts, 203 ; Addams v. Heffernan, 9 Watts, 530 ; Reed v. Reed, 1 W. & S. 235, and County of Beaver v. Armstrong, 44 Pa. 74.

"The rule of law, that where a widow is entitled to annual interest in lieu of dower she shall have interest on arrears of interest from the time the same fell due, seems clearly established by those cases.

"In the case of Stewart v. Martin, Mr. Justice SERGEANT, p. 203, said :

"'The principal question in the case is whether the plaintiff was entitled to interest on the annual sums due by the defendant in arrear. We have had occasion already, at this term, to consider the peculiar character of the widow's right to annual payments of money in lieu of dower, and to observe that it partakes of the various features of an annuity, of interest on money, and of a rent charge, without being susceptible of a distinct classification with either. Being given in lieu of land which yields annual profits, and for her maintenance, it ought, in justice and equity, to be punctually paid when due, and if withheld, she is entitled to interest as a compensation for the loss sustained by the delay. The law looks with a favorable eye on

provisions for a widow. In the Drapers' Company v. Davis, 2 Atk. 211, an annuity given by will was in arrears; the Lord Chancellor said: There is no certain rule of the court for giving interest for arrears on an annuity. The first instance of its being done in this court was in the case of Ferrers v. Ferrers, Cas. temp. Talbot, 2; but it has been done in many instances since, and, and for the most part, when it was the bread of the wife or child.'

" The principle involved in the rule seems to have been extended to all cases, where an annuity is given for maintenance, and in accordance with this liberal application of the principle we find the court allowing interest on arrears of interest to a daughter in Addams v. Heffernan, 9 Watts, 529.

" In that case Mr. Justice KENNEDY, at p. 543, 544, said of the rule and the reasons underlying its application:

"' We also think that the court was right in the instruction given to the jury, which is excepted to in the eighth and last error. Catharine Heffernan, the intestate of the plaintiff below being a daughter of the testator, William Singer, the elder, it may therefore be reasonably supposed that he intended the twelve pounds per annum as a partial support for her at least, and for this purpose his desire was that it should be punctually paid to her, that she might by means of it be made comfortable. For want of it, however, it may be, that debts were contracted upon which she had to pay interest. But besides, as it regarded her, the twelve pounds are not to be looked upon as the interest of money that was due or owing to her. It was itself principal to her, so far as she had a claim to it; and therefore ought to have been punctually paid. And had it been so, she would have had the use of it, which we must presume would have been equal in value to the interest; but having lost the use of it, by reason of the delinquency of the owners of the land, who were bound to have paid it regularly as it fell due, it is but reasonable that interest should be allowed as a compensation for the loss so occasioned.'

" In Reed v. Reed, 1 W. & S., 235, real estate charged with the payment of an annuity to a widow was sold by the sheriff: The widow demanded the overdue and unpaid installments of her annuity out of the proceeds of the same, but the sheriff paid the proceeds to other lien creditors, to the exclusion of

the widow, upon the legal theory that the said installments were a fixed lien on the premises, and were a charge on the same in the hands of the sheriff's vendee.

" The suit was brought by the widow against the sheriff for the recovery of the installments due and unpaid at the time of the sheriff's sale, with interest on the installments respectively from the time they fell due.

" The court held :

" 1. That the sheriff's sale divested all the installments fully accrued and demandable.                       •

" 2. That the widow was entitled to recover from the sheriff, not only the principal of the installments, but, in addition to such principal, interest on the installments from the time they became payable respectively.

" SERGEANT, at p. 239, said : ' That the plaintiff, however, in a case like the present, is entitled to interest from the time each year's sum is payable, was decided in Addams v. Heffernan, 9 Watts, 530, which is not to be distinguished from the case before us ; and may also be collected from Reed v. Reed, 9 Watts, 263, when this case was before the court on a former hearing.'

" The Reed case shows the vigor of the rule, and strongly implies that the only exceptions to it (if they can be called exceptions) are instances in which the conduct of the widow has been that of sufferance, and where the default has been with her acquiescence.  In that case the sheriff acted in good faith upon a mistake of law, and was guilty of no conscious dereliction ; and yet, the high character of the claim of the widow was maintained against him, and he was compelled to pay interest on all the annual installments of interest due and demandable at the time of the sheriff's sale, with interest from the time they became due respectively.

" In County of Beaver v. Armstrong, 44 Pa. 63, the principle was extended and applied to overdue coupons of railroad bonds, and interest was allowed from the date of demand and refusal or failure to pay.  Mr. Justice READ, at p. 74, in speaking of the principle, and of the cases in which it had been applied, . said :

" So an action of covenant lies for a ground rent as soon as it is due, without a demand: 3 Penn. Rep., 464, 465.  On a

recognizance in the orphans' court for securing to a widow the interest on her third part of the money at which an estate is valued, the act of 1794 makes it recoverable as rent—the Supreme Court hold the widow's interest to be in the character of annuity, of interest on money, and a rent charge, and that if the interest be not punctually paid, the widow shall recover interest from the time it became due: 2 Watts, 203. There cannot be a stronger case; for as a widow's annuity partakes of the character of a rent charge, a rent charge partakes of the character of the annuity, and it is so considered by the court, who put it on the same footing as to bearing interest. The reason is the same in both cases; the annuity is in the nature of maintenance income, and bears interest if not paid punctually, because it is in lieu of the widow's share of the profits of the land, and all that is reserved to the widow; the rule is the same as to ground rent, as it is of the same nature. But a court never inquires into the fact whether the annuity or the rent is necessary for the support of the widow or the ground landlord; the rule is the same whether they are rich or poor, being founded in the nature of the debt, and the manifest justice of the interest being paid as a compensation for withholding payment: 2 Watts, 203. See Smyser v. Smyser, 3 W. & S. 438. And in Addams v. Heffernan, 9 Watts, 529, it was held that where a sum of money is set apart and charged upon land, the interest of which is to be paid annually, if it be not punctually paid, the annuitant is entitled to recover interest upon it annually from the time it was payable. The same doctrine as to interest on arrears of ground rent is laid down in McQuesney v. Hiester, 9 Casey, 435.

"Nothing appears in the evidence which would justify me in finding that Margaret A. Jones failed to receive her interest through any fault of her own, or through her failure to demand it, or by her acquiescence in the default of the personal representative of Jacob W. Seitzinger, and interest is therefore allowed upon the interest installments respectively from the time they became due.

"CLAIM OF J. C. ILLIG & BRO. UPON THEIR ATTACHMENT EXECUTION AGAINST THE SHARE OF EMMA B. HILL.

"The exceptions of J. C. Illig & Bro. raise three questions:
"First. Whether the share of Emma B. Hill is in trust?

" Second. If it is in trust, whether the income of her share is attachable before it shall have passed into her possession; and

" Third. Whether upon the decease of Mary Agnes Seitzinger, without having exercised her power of appointment, her share passed to her illegitimate children, viz: Thomas P. Seitzinger and Mary Agnes Van Luvance.

#### " I. THE INTEREST OF EMMA B. HILL.

" The testator gave the shares of his daughters to Richard Boone et al., ' their heirs, executors, administrators and assigns as joint tenants, in trust, as to the share of each respectively, for her sole and separate use, during her natural life, so that she may receive the income, rents, issues and profits thereof, as and when the same shall have accrued and become payable, with her own separate hand, or as she by her sole and separate act may direct, and so that the same shall not be in any manner pledged, appropriated, disposed of, or parted with by anticipation, or before the same shall have accrued and become payable (and shall not be in any manner liable for the debts, or to the interference or control of any husband whom she may marry) or be subject to execution, attachment, sequestration or adversary proceedings of any sort for her own debts, or for any debts or liabilities whatever; ' and upon and from and after her decease in trust for the use of such of her issue as she shall appoint to, and for want of testamentary appointment to issue ' in trust upon and from and after her death for the use of such person or persons, and for such estate or estates as would then be entitled to the same, if she had then died, the absolute owner of the same, a widow and intestate.'

" It is to be observed that the corpus of the shares of the daughters is vested in trustees; that the daughters are given only the income, and that only for life; that the income is not to be liable to anticipation, or to execution or attachment, for their debts or the debts of their husbands ' or for any debts or liabilities whatever; ' that the corpus is subject to a power of appointment by the daughters, to their issue living at their death; and that in default of such appointment, it is to devolve to such persons as would take the same from the daughters if they had died intestate, the absolute owners.

" It is contended by the learned counsel for the exceptants

that the trust created by the above provision is a trust for coverture only, and that Mrs. Hill having, at the time of the making of the will, been a single woman not contemplating marriage, and moreover being now discovert, no valid trust for coverture was created, or if any such trust was created that it fell upon her becoming discovert by the death of her husband.

" That the framework of the trust contains apt words for the creation of a trust for coverture is undoubted, but that the provisions creating the trust were intended to erect something more than a married woman's trust seems equally clear when we consider them in connection with the legal object of trusts for mere coverture.

" At common law, marriage gave the rents, issues and profits of the real estate of the wife to her husband, and clothed him with the absolute power to appropriate, at his discretion, all her personal property. The sole object of the creation of a married woman's trust was to deprive the husband of his common law rights in her property, accruing to him as a legal consequence of marriage : Thomas v. Folwell, 2 Whart. 16. That being the exclusive object of a trust for coverture, the only clauses in the will of the decedent which can relate to that sort of trust are those which are intended to deprive the husband of Mrs. Hill, or of such husband's creditors, of any rights in or control over her share. This is reasonably clear from a long line of cases in this state, beginning with Lancaster v. Dolan, 1 Rawle, 231, and continuing, without exception or criticism, to Quin's Estate, 144 Pa. 444.

" Now, if there were no provisions in the trust, excepting such as were intended to affect the rights of the husband and those claiming through him, it would, of course, be purely a trust for coverture, as was the case in Smith v. Starr, 3 Whart. 62 : Dodson v. Ball, 60 Pa. 492; Yarnall's App., 70 Pa. 335; Ogden's App., 70 Pa. 501; and many other cases. But here we have the share of Emma Belinda vested in trustees, she to receive the income, rents, issues and profits for her sole and separate use during her natural life ; the same are not to be in any manner pledged, appropriated, disposed of or parted with, by anticipation; and (in addition to not being liable for the debts, or to the interference or control of any husband) are not 'to be subject to execution, attachment, sequestration or adversary pro-

ceedings of any sort, for her own debts, or any debts whatsoever.'
Here is something more than a trust for coverture.   If a trust
for coverture only had been intended, it would not have been
necessary to impose limitations and restrictions upon Mrs. Hill,
for in trusts of that character the cestui que trust has no power
not clearly given her by the instrument creating the trust.

"In Thomas v. Folwell, 2 Whart. 16, GIBSON, C. J., said: 'We
therefore hold it to be the settled law of Pennsylvania, that in-
stead of having every power from which she is not negatively
debarred in the conveyance, she shall be deemed to have none
but what is positively given or reserved to her.'

" The will in this case is full of convincing evidence, that it
was drawn by a lawyer exceptionally familiar with the law as
it stood at the time the will was drawn, and it cannot be sup-
posed that he was unacquainted with a rule of law which had
been distinctly stated in Lancaster v. Dolan, 1 Rawle, 231,
followed in Dorrance v. Scott, 3 Whart. 309, and applied in
Wallace v. Coston, 9 Watts, 137, and other cases.   The testa-
tor evidently intended to protect his daughters not only from
their husbands, but also from themselves, by introducing the
clauses against pledging and anticipating the income, and in
exempting it from execution, sequestration and attachment.
And this it was perfectly competent for him to do, as is clearly
shown by a long line of cases.

"In the leading case in this state, Fisher v. Taylor, 2 Rawle,
33, the testator directed his executors to purchase a tract of
land, taking the deed in their names in trust for his son, Sam-
ple Taylor—he, Sample, to have the rents, issues and profits;
but the same (i. e. the rents, issues and profits) not to be liable
for Sample's debts; and 'at the death of the said Sample, the
tract of land aforesaid to vest in the heirs of the body of the said
Sample, in fee ; but if the said Sample shall die without heirs
of his body, then the tract of land aforesaid to vest in my right
heirs.'   Mr. Justice SMITH, in speaking of Sample's interest,
at p. 37, said:

"'He has no life-estate in it, not any interest which is sub-
ject to be sold for the payment of his debts.   The benefit he
derives under the will of his father, is merely the right of re-
ceiving from the trustees the rents and profits of the premises
which they hold.

"In Ashhurst v. Given, 5 W. & S. 323, the testator devised to his son Samuel certain real estate in trust, to possess, occupy and manage the same, and carry on the business there, and to trade, barter, deal, buy, and sell, and to do all things that pertain to the estate and its business during his natural life; and out of the profits thereof, from time to time to make investments or purchase other property, real or personal, for the same uses, purposes, and trusts, to wit, for the use of such child or children as the said Samuel Given might have lawfully begotten at the time of his death, and if he should have no such issue, then for the use of such person or persons as should be the heir or heirs at law of the testator at that time. In consideration that Samuel would undertake to execute the trust personally he was allowed a reasonable support out of the trust fund for his personal service rendered. It was held that Samuel Given had no interest in the subject which could be taken in execution.

"In Vaux v. Parke, 7 W. & S. 19, a testator gave land to trustees, in fee, in trust during the life of his son, to pay the income to him, and after the son's death to convey according to the son's appointment by will; or in default, to such persons as would be his heirs if he died intestate; provided that if the son should become so relieved from financial embarrassment, as in the opinion of the trustees to render it expedient, they should convey in fee to him. Held, that the son had no estate in the land which could be seized and sold by execution on a judgment against him.

"In Shankland's Appeal, 47 Pa. 113, there was a devise to a trustee of real and personal estate to hold in trust for and to collect and receive the rents, issues and interest, and pay over the same to a son of the testatrix, during his natural life, without being subject to his debts and liabilities; 'and at his decease then I do give, devise and bequeath the same to all and every the child or children, if any, of him, my said son, his, her and their heirs and assigns, in fee simple. But in case of the death of him, the said Alexander T. Shankland, without issue him surviving' then over; and it was held to be an active operative trust, and that the whole estate vested in the trustee.

"In Rife v. Geyer, 59 Pa. 393, there was a devise of real estate to B. in fee, in trust for G. to let it and receive the rents,

etc., ' for life for his own separate use, so as not to be liable
for his debts, control or engagements;' and ·after G.'s death
to hold it for the use, etc., of the heirs and legal representa-
tives of G., their heirs and assigns forever.  At p. 397, Mr.
Justice SHARSWOOD said :

" ' On the whole, then, we are of opinion that the rule in Shel-
ley's Case has no application ; that there is, under the limitation
in this will, an equitable estate for life in Stephen H. Geyer,
with a legal contingent remainder in fee to his heirs and legal
representatives under the intestate laws ; and such being the
clear intention expressed by ·the testator, and no technical rule
of law preventing it, it must be carried into effect.'

" In Keyser v. Mitchell, 67 Pa. 473, a testator devised real
estate to trustees to collect, etc., rents and income, and ' pay
said income, &c., or so much as the trustees may think proper,
&c., under all the circumstances of the case, for the support and
maintenance of my son Charles during his life, with the intent
and purpose that the said trustees may either pay the said
income, or such portion thereof as they may think proper, into
the hands of my son, or disburse the same in such way as to the
said trustees may seem best for his comfortable support and
maintenance ; such payments and disbursements to be at all
times at the sole and absolute discretion of said trustees.'  Held,
that the income was not liable to attachment on a judgment
against the son.

" In Thackara v. Mintzer, 100 Pa. 151, the rest and residue
of the estate was given, devised and bequeathed to the execu-
tors in trust, to let, etc., to keep invested, etc., and 'pay over
and distribute the net income of the estate real and personal, as
follows: one third thereof to my son George W. Mintzer for
and during all the term of his natural life.'  The testator then
proceeded as follows :

" ' Item. It is expressly my will that the income which I
have hereinbefore directed to be paid to my children respec-
tively is to be for their respective sole, separate and exclusive
use and benefit, so that the same shall not be in any manner
pledged, appropriated, disposed of, or parted with by anticipa-
tion, or before the same shall have accrued and become payable ;
nor be subject to execution, attachment, or sequestration for
any debts or liabilities whatever.'  Held, that the trust was not
attachable.

" In Mannerback's Estate, 133 Pa. 342, the testator directed: ' Each of my said children shall receive the interest only of his or her respective share, during his or her natural life, and, upon the death of each of my said children, then the children of such deceased child shall take absolutely and without restriction, in equal shares, the share so limited to their parent during his or her natural life.' The testator then appointed George D. Stitzel trustee to collect, etc., the rents, with direction that he should pay the income to the children of testator. The will contained a clause exempting the income from seizure or attachment for the debts of testator's children. The Supreme Court, reversing this court, held that Samuel, one of the children, had but an equitable interest for life.

" In Stambaugh's Estate, 135 Pa. 585, one of the expressed grounds of the decision by the Supreme Court was the severance by the testator of the product of the fund from the fund itself. The ground upon which it was contended in that case that Moses had a vested interest in the fund was the use of the word ' heirs ;' but the Supreme Court, in looking into the whole will, discovered that the testator used it in the sense of children, and that therefore he did not mean that the fund should vest in Moses. Mr. Justice PAXSON, at p. 595, said:

" ' We think it manifest from this will that the testator intended (a) to sever the product from the fund producing it, and that he wished the former only to be paid to his son during his life ; and (b) after his death the principal to go to his children. By the word " heirs " he evidently meant children.'

" In the Estate of Elizabeth Beck, 133 Pa. 51, it was held, that a legacy given expressly upon condition that it shall not be liable to be attached or seized for the debts of the legatee, but shall be paid by the executors directly to the legatee, without diminution, is protected by that condition from attachment in the hands of the testator's executors, at the suit of the legatee's creditors.

" In Mehaffey's Estate, 139 Pa. 278, the language of the trust was : ' Three thousand dollars shall be invested by him in good securities, and the interest thereon paid over annually to my son William, or to such person as he may authorize to receive the same, for and during the full term of the natural life of the said William Mehaffey, and without any liability for

his debts, contracts or engagements which he may make ; and at his death the principal sum so invested, shall be equally divided among my sons Charles and Madison, and my daughter Ann, or their legal representatives.' William gave an order on the trustee for $250, to W. F. Barclay for a debt contracted during the lifetime of the testator. The payment of the order out of the income having been resisted, the court below decided in favor of Barclay, the creditor ; but the Supreme Court reversed, saying (p. 383) that 'the testator did not intend to expose the bounty, provided for an improvident spendthrift son, to liability for such a claim as the one on which the decree in this case is based.'

" In the Estate of Catharine Goe, deceased, 146 Pa. 431, the testatrix provided : 'It is my distinct will and desire that none of the effects, real, personal or mixed, as above devised and bequeathed to my children, or to either of them, can be seized upon or levied upon for any debt against any one of my said children,' and it was held that a share of personalty, so bequeathed, was not attachable in the hands of the executor.

"It was said by GIBSON, C. J., in Holdship v. Patterson, 7 Watts, 551, that 'a benefactor may certainly provide for a friend without exposing his bounty to the debts or improvidence of the beneficiary. He has an individual right of property in the execution of the trust, and to deprive him of it would be a fraud on his generosity. To appropriate a gift to a purpose or person not intended would be an evasion of the donor's private dominion.'

" In that case the donors were strangers to the blood of the beneficiary. If the donor's expressed wishes are respected and executed by the law in such a case, why should they not be where the donor is a parent and the beneficiary a child ? The law has no prejudice against trusts, and where they are created for legitimate objects they have always been sustained.

" The entire beneficial interest in the shares of the daughters of this testator is not given to them by the will. They are given the income only, for life, with no interest in the corpus, but simply a limited power of appointment over it. If they die leaving issue, they may appoint to such issue ; and if they should make no appointment, and die leaving issue, the corpus of their shares is given by this will to such issue ; if, however,

they should die without leaving issue, the shares of such daughters so dying are given over to the surviving children of the testator, and the issue of deceased children. So that it is clear that the daughters do not have the entire beneficial interest. It was said in Rife v. Geyer, 59 Pa. 393, that whenever the entire beneficial interest is in the cestui que trust, without restriction as to the enjoyment of it, there is no reason why the legal estate should not be considered as actually executed. In accordance with that principle it was held in Mackason's App., 42 Pa. 330, that one sui juris cannot, as against creditors, either prior or subsequent, settle his property in trust for his own use for life, and over to his appointees by will, and, in default of appointment to the use of his lawful heirs in fee; and in Hahn v. Hutchinson, 159 Pa. 133, that there can be no valid spendthrift trust, where the trustee is also the cestui que trust, with the absolute ownership of the subject of the trust, whether income or principal. It is against the policy of the law that a person shall be the owner of property and not have the power of alienation and of binding it for his debts, and Mackason's App. and Hahn v. Hutchinson were decided upon that principle. But in this case the daughters are given nothing but the income for life, and it is necessary that the trust be maintained in order that the income may be secured to the daughters for life, and that the contingent remainders in the shares may be preserved to those entitled to the corpus upon the decease of the daughters.

"My conclusions are :

"a. That the share of Emma B. Hill is in trust, and that her interest is limited to the income of her share for life ;

"b. That the income of her share is not liable to attachment in the hands of the trustees.

"The first, second and sixth exceptions are overruled.

"II. THE INTEREST OF THE ILLEGITIMATE CHILDREN OF MARY AGNES SEITZINGER.

"On pp. 44, 45 of the original report there are the following findings of fact :

"First. That Mary Agnes Seitzinger died, testate, a single woman, on the 16th day of June, 1867, leaving to survive her the following issue, viz :

. " *a.* Thomas F. Seitzinger, an illegitimate son.

" *b.* Mary Agnes Seitzinger (now Van Luvance), an illegitimate daughter.

" By her last will and testament she gave and devised all her estate to Dr. William Wetherill.

" Second. On the 9th day of November, 1874, the said Thomas F. Seitzinger, and Maggie his wife, and Mary Agnes Van Luvance, and Charles D. her husband, by a writing under seal, and recorded in Misc. Book D, vol. 20, p. 39, recorder's office of Berks county, sold, remised, released and quitclaimed to. Jacob J. S. Seitzinger, Margaret A. Jones, Richard Boone, trustee of Margaret A. Jones, Mary Agnes Newbold and George W. Bruckman, trustee of Mary Agnes Newbold, Emma B. Hill and Nicholas Jones, trustee of said Emma B. Hill, Joanna Carlton Seitzinger, executrix, legatee and devisee of Dr. F. S. Seitzinger, deceased, the surviving heirs, legatees, legal representatives and residuary devisees of Jacob W. Seitzinger, in the proportions and for the estates they were severally entitled to have and to hold under the will of Jacob W. Seitzinger, all the estate, right, title, interest, claim or demand whatsoever of them the said Thomas F. Seitzinger and Mary Agnes Van Luvance.

" The income of the share of Mary Agnes Seitzinger is given to her for life, with a testamentary power of appointment of the corpus of the share to her issue ; and in default of such appointment, the trustees are to hold it ' in trust upon and from and after her death, for the use of such person or persons, and for such estate or estates, as would then be entitled to the same, if she had then died the absolute owner of the same, a widow, and intestate.'

" It is contended on the part of the attaching creditors that the words ' for the use of such persons . . . . as would then be entitled to the same, if she had then died, the absolute owner of the same, a widow, and intestate,' are descriptive of the individuals to take under the limitation, and that by virtue of section 3 of the act of April 27, 1855, illegitimate children answer the description as well as children born in wedlock. It is said that the shares of the daughters, by the language of the limitation, are to go to such issue as would inherit them if the daughters were the absolute owners, and died intestate. It is conceded

that the view taken by the court in the original report that the daughters took but an estate for life is correct, but it is asserted that that fact is immaterial, for the reason that, as those who take under the limitation take by personal description, they must take by purchase under the will, and not by inheritance from the mother; and that as the act of 1855 capacitates illegitimates equally with legitimates to inherit from the mother, illegitimates are as completely within the description of those qualified to take as legitimates. It is insisted that all such children as might have inherited any property of Mary Agnes Seitzinger, if she had died a widow, were competent to take her share at her death, without having made a testamentary appointment.

" The testator does not limit it over to such 'lawful' issue as could take her property, but to such 'person or persons . . . . as would then be entitled to the same if she had then died, the absolute owner of the same, a widow and intestate.'

" Now what would have been the legal relation of Thomas F. Seitzinger and Mary Agnes Seitzinger to the share, if their mother had died ' the absolute owner of the same, a widow, and intestate ? ' Certainly it would have devolved upon them. This is clear from the construction given to the act of 1855 by Opdyke's Appeal, 49 Pa. 378, where Mr. Justice AGNEW says:

" ' Before the act of 1855, the difference between legitimate and illegitimate children, as to descendible property, was simply the capacity to inherit. The former was able and the latter unable to inherit. That act declared that illegitimate children should take and be known by the name of their mother, and they and their mother shall respectively have capacity to take or inherit from each other personal estate as next of kin, and real estate as heirs in fee simple. The condition of the bastard is thus changed. Before, he was filius nullius, now he is next of kin and heir; before, he had no capacity or ability, now he has capacity to take or inherit. He is the son of his mother and she is his mother, so that now each may take or inherit from the other. The legislature has chosen to convey its meaning in these expressions which strike at the root of his disability by declaring his capacity. It has been said that as between him and his mother he shall inherit her property, without proviso or qualification, as her heir. But how do heirs inherit?

Certainly in the manner the law provides—if one heir, solely ; if more than one, together. How then can we say, when other heirs are also left, he shall not inherit, he shall not be an heir? It is said another is born in lawful wedlock and therefore he shall not inherit. But in respect to inheritance from the same mother, one is as lawful as the other. As to her property neither is now illegitimate. Birth in lawful wedlock is no longer the criterion, but blood relationship. The bastard and the lawful child have now a like capacity. It would be clearly legislation on our part to say that when lawful children are born as well as bastards, the latter shall not have capacity to take from the common mother, when the law has said they shall.'

" To the same effect is the language of Judge WARREN J. WOODWARD in the estate of Catharine Ringler, 1 Woodward's Decisions, p. 329, where he says :

" ' By the common law, an illegitimate child is one who, not being born in wedlock, cannot take or inherit personal estate as next of kin, or real estate as an heir in fee simple. This common law disability, so far as such a child and its mother are concerned, it was the express purpose of the act to remove. It did not profess to make the child legitimate. It simply changed its legal status in a single particular. But to the extent contemplated by the act, its language is both explicit and without qualification. It provides that illegitimate children and their mother shall " respectively have capacity to take or inherit from each other personal estate as next of kin, and real estate as heirs in fee simple." Legitimate children, as to the mother, can do no more than this. The whole common law disability is removed. The statutory words are broad enough to include every case, and to confine their application to the case of a child whose mother has no legitimate children would be, not judicial construction, but judicial legislation.'

" These citations show how completely the act of 1855 changed the status of the bastard in his relation to inheritance and succession from his mother. As Justice AGNEW says : ' The condition of the bastard is thus changed. Before, he was filius nullius, now he is next of kin and heir; before, he had no capacity or ability, now he has capacity to take or inherit.' This being so, let us adopt the hypothesis set up by the will of

this testator, and assume that Mary Agnes Seitzinger died, the absolute owner of her share, a widow and intestate.  To whom, at her death, upon that supposition, would the share have gone? The question is answered, in effect, by Mr. Justice AGNEW, when he says : ' But in respect to inheritance from the same mother, one is as lawful as the other.  As to her property neither is now illegitimate.  Birth in lawful wedlock is no longer the criterion, but blood relationship.  The bastard and the lawful child have now a like capacity.'

" The fact that the legal status of bastards was changed after the execution of this will does not appear to affect the question. In Miller's App., 52 Pa. 116, where an act legitimating a bastard was passed forty years after the will was made, WOOD-WARD, C. J., in an opinion holding that the bastard took under the description of the will of ' lawful issue ' said : ' Nor can this fairly be called a making of a new will by act of assembly forty years after the death of the testator.  He must be presumed to have meant his words should have their appropriate legal effect, and at all times it is the province of the lawmaking power to define who shall be "lawful issue."  The law of every country regulates the succession of estates on the death of its citizens.  The testator referred himself to the law for ascertainment of "lawful issue."  We do not therefore change his will when we say it would have operated in favor of Rachel had she survived her mother.  We simply give effect to the act of assembly, and like effect to the will.'  And yet in that case the testator spoke of Rachel, the bastard, as the ' female child ' of his daughter Eliza, and gave her $150, which he directed should be deducted from Eliza's share; showing that in his mind Rachel was not included under his conception of ' lawful issue ; ' as, indeed, she was not, legally, in the then existing state of the law.  But when, forty years after the making of the will, the legislature passed an act legitimating Rachel as the daughter of Eliza Miller, and made her ' capable to inherit and transmit any estate whatsoever, as fully and completely, and to all intents and purposes, as if she had been born in lawful wedlock,' she became qualified to take under the will of Peter Miller as ' lawful issue,' through a rule of law which imputes to a testator an intent that such persons shall take under his will as, in law, answer his description at the time appointed by him for devo-

lution or distribution. Miller's App. was cited and followed in McGunnigle v. McKee, 77 Pa. 85, and in Johnson's App., 88 Pa. 353.

" The cases in which the act of 1855 has been construed and applied show a firm judicial purpose to carry out the policy of the act to the utmost extent authorized by its language ; and from the liberal interpretation which has been placed upon the act, and the clear and comprehensive language of this will in giving the share of Mary Agnes Seitzinger, upon her decease without appointment, to 'such person or persons . . . . as would then be entitled to the same, if she had died the absolute owner of the same, a widow, and intestate,' I am of opinion that her share passed under this will to her illegitimate children, Thomas F. Seitzinger and Mary Agnes Seitzinger (now Van Luvance).

" They having sold and assigned their interests in the estate to Emma B. Hill and others, as found in the second finding of fact, supra, 23, 24, my conclusion is that that part of the assigned share which passed to Emma B. Hill is covered by the attachment of J. C. Illig & Bro., and will be distributed to them.

" The third, fourth, fifth, seventh and eighth exceptions are sustained."

*Errors assigned* were in overruling the exceptions to the adjudication.

*William Kerper Stevens*, of *Stevens & Stevens*, for John C. Illig et al.—The trust for Emma B. Hill, being a trust for separate use created for an unmarried child and not in contemplation of marriage is ineffective: Quin's Est., 144 Pa. 453 ; Dodson v. Ball, 60 Pa. 496; Yarnall's App., 70 Pa. 335.

Even admitting that the words " not subject to her debts," etc., were inserted to create a special trust, the language used would not be effective in the creation of a valid spendthrift trust : Hawkins on Wills, second edition, sec. 140 ; Leicester v. Biggs, 2 Taunton, 109 ; Rife v. Geyer, 59 Pa. 393 ; Keyser's App., 57 Pa. 236 ; Fisher v. Taylor, 2 Rawle, 33 ; Vaux v. Parke, 7 Watts & Sergeant, 19 ; Brown v. Williamson's Exr., 36 Pa. 338; Barnett's App., 46 Pa. 392 ; Shankland's App., 74 Pa. 113 ; Huber's App., 80 Pa. 348.

The trust being to hold is a passive one and not necessary to protect those in remainder, as the estate devised is in effect to Emma Belinda Hill, who takes an estate absolute in the personal estate and a fee simple in the real estate : Yarnall's App., 70 Pa. 342; Ogden's App., 70 Pa. 501; Earp's App., 75 Pa. 123; Physick's App., 50 Pa. 128 ; Dodson v. Ball, 60 Pa. 495; Williams's App., 83 Pa. 377.

The court below distributed the interest of Emma B. Hill in the share of Jacob J. S. Seitzinger, amounting to $726.52, directly to Mrs. Hill, on account of income due her and converted to his own use by her brother Jacob. Jacob, as administrator of his father's estate, had this money belonging to his sister in his hands. It was a debt due her from him ; her trustee had nothing whatever to do with the collection of the debt. Jacob had collected this money as the agent of Mrs. Hill, and his possession was her possession. The amount thus distributed to her is on account of a debt due her from Jacob, liable to be attached, and therefore should have been distributed to appellants on account of their attachment.

It is clear that the participants in the fund having suffered by the devastavit are entitled to be reimbursed by Jacob J. S. Seitzinger's distributive share. It is also clear that a common creditor of Jacob J. S. Seitzinger would have no standing as against the parties having a lien on the fund under the will. According to the opinion of the court below, the share known as that of Mary Agnes Seitzinger goes to her children and their assignees ; she being dead, her administrator is not a devisee. Jacob J. S. Seitzinger was indebted to her for income due and payable which he had converted to his own use, and she was a creditor of his to that extent, but not being a participant in the fund, her administrator's standing would be that of other common creditors of Jacob J. S. Seitzinger, and until the parties entitled to the fund are paid he gets nothing therefrom.

The illegitimate children of Mary Agnes Seitzinger, being the persons whom the law designates as the heirs of their mother, inherited her share absolutely : Opdyke's App., 49 Pa. 378; Neil's App., 92 Pa. 196 ; McGunnigle v. McKee, 77 Pa. 81 ; Miller's App., 52 Pa. 113 ; Johnson's App., 88 Pa. 346.

*Cyrus G. Derr*, *B. Frank Dettra* with him, for James K. Getz, executor of Margaret A. Jones, deceased.—Unless the widow, by contract, parts with her right or does some act by which she is estopped from demanding the interest, the payment to the heirs of the principal sum could not affect her rights: Haines v. Ellis, 24 Pa. 253; Hinkle v. Landis, 131 Pa. 573; Luther v. Wagner, 107 Pa. 345.

Where by the terms of a will the testator's debts are generally charged upon his real estate, the lien thus created will not extend beyond the statutory period of five years: Trinity Church v. Watson, 50 Pa. 518.

Where a testator devises real estate to his executors upon an express and active trust to sell and pay his debts, the creditors do not lose their right of payment by the running of five years or of any period other than such as would raise the presumption of payment: Alexander v. McMurry, 8 Watts, 504; Steel v. Henry, 9 Watts, 523: Hughes v. Wynne, 1 Turner & Russell, 307; Cadogan v. Ewart, 7 Adolph. & Ellis, 634; Gibson v. Rogers, 1 Ambler, 95.

Broad Mountain lands, the sale of which produced this fund, were lands the title to which had been purchased by the executor and the administrator with the will annexed after the decease of Jacob W. Seitzinger, and presumably with the personal fund of the estate; the said lands so purchased and the fund produced by their sale must, therefore, be regarded as personal property as to which there is no limitation or lien against a claim such as that of the appellee: Oliver's App., 101 Pa. 299; Smyser v. Smyser, 3 W. & S. 437.

OPINION BY MR. JUSTICE DEAN, October 7, 1895:

J. C. Illig & Brother, the appellants, having a judgment against one Emma B. Hill for $1,954.85, issued an attachment execution upon it and had the writ served upon Henry A. Muhlenberg, trustee of Elizabeth Seitzinger, deceased, as garnishee. The ward of the trustee and garnishee had died on the 3d of October, 1892, at which time there was in his hands a trust fund for her benefit of $24,677.66. The defendant in the attachment execution, Mrs. Hill, a sister of Elizabeth Seitzinger and legatee under the will of their father, had an interest in this fund; to what extent, if at all, this interest was subject

to seizure on an attachment execution by her creditors, was the question to be answered by the court below. The learned judge of the court, with great labor and painstaking, has, in his findings and opinion, so concisely and clearly put before us all the material points in the case, both of fact and law, that our work of review to determine whether appellants' averments of error be well founded is comparatively light.

Elizabeth Seitzinger, the deceased ward, was a daughter of Jacob W. Seitzinger, who died on 19th of November, 1850, having made his last will the 24th of the preceding October. He left to survive him two sons, Jacob John S. and Franklin S. Seitzinger; four daughters, Elizabeth, Margaret A., Mary A. and Emma B., now Hill, and two grandchildren, Mary A. and Jacob S. Souder. By his will, after certain specific devises and legacies, he gave to each son and daughter, except Elizabeth, shares in his residuary estate; the value of these shares being equal, two twelfths for each child, and one twelfth for each of the grandchildren. Elizabeth, whose share produced the fund in litigation, was of weak mind, and the father after adverting to this affliction, directs that his residuary estate, real and personal, shall stand charged with an annual payment to her trustee for her benefit of seven hundred dollars during the life of his wife, and after the death of the wife, with an annual payment not exceeding fifteen hundred dollars during the life of Elizabeth. To provide for prompt payment of this annuity the fund for distribution was set apart for her and came into the hands of her trustee, who applied the income during the life of Elizabeth for her benefit. The will of the father further provided that at the death of Elizabeth the fund thus set apart should fall into and form part of his residuary estate. It further directed that in the event of the death of either of his children without issue the share of such child should go to the increase of the shares of his other children. As before noticed, the shares of each child, except Elizabeth, in the residuary estate was two twelfths, and of each of the two grandchildren, one twelfth. The shares of the daughters, except Elizabeth, were bequeathed and devised upon trust for their sole and separate use during life, they to receive the income and profit thereof and not to be subject to seizure for their own debts or for those of their husbands; at death of

either daughter, to go to such of her issue living and in such proportions as she might by will appoint, and in default of appointment, in trust for the use of such persons as would have been entitled to the same had she died the absolute owner thereof.

Emma B. Hill, the daughter of testator, is entitled to two elevenths of the fund in her own right; further she has a claim on the fund through another sister, Mary Agnes Seitzinger. This sister died unmarried on the 16th of June, 1867, leaving two children. By will she devised all her estate to one Dr. William Wetherill. As the court has properly interpreted the will of her father, she had no power of appointment by will so far as concerned her estate under that will except to appoint, as to part thereof, a surviving husband, or to lawful issue; in default of such appointment, then it was to go to such person or persons and for such estate or estates as would then be entitled to the same if she had then died the absolute owner of the same, a widow intestate. As noticed, the father's will is dated the 24th of October, 1850, and he died the following November. The children being illegitimate, they had no capacity to inherit. But long before the mother's death the act of 1855 was passed, declaring that illegitimate children and their mother, respectively, should have capacity to take and inherit both real and personal estate from each other. That this act, · from the date of its passage, removed the disability of these children, the learned judge of the court below in his opinion has clearly shown from the authority of Opdyke's Appeal, 49 Pa. 378, and Ringlers' Estate, 1 Woodward's Decisions, 329; and further the fact of the inheritable capacity having been conferred by statute after the estate vested in the mother under the ancestor's will, does not prejudice the right of the illegitimate children to take from her. See Miller's Appeal, 52 Pa. 116, which has been followed in subsequent cases by this court. The mother, then, having no power to will her estate to Dr. Wetherill, and not having willed it to issue or surviving husband, died intestate, and it went to her children as if she had been the absolute owner thereof, for they, under the terms of their grandfather's will, were " such person or persons " as, in such event, were entitled to the same.

But these two children for a valuable consideration, by deed

on the 19th of November, 1874, sold and transferred all their right and claim in the estate of their mother to the surviving legatees, not including Elizabeth, of their grandfather; therefore by this instrument there passed to Mrs. Hill a fractional interest in her sister, Mary A. Seitzinger's share, of the money value of $794.84.

There was still another accretion to Mrs. Hill's share. Richard Boone, the acting executor and trustee, appointed by the will, on May 1, 1857, resigned his trust, and Jacob J. S. Seitzinger, a son and legatee, who had then come of age, succeeded him, and gave bond in $20,000. In July, 1873, he filed his account, which on audit showed a balance against him of over $25,000. He paid none of this over to his co-legatees but converted the whole to his own use; $20,000, the amount of the bond, was recovered from his sureties, leaving still an unpaid balance including interest and costs of $9,411.51. His assignee in bankruptcy made claim to Jacob's share of the fund on the ground that his assignor as a beneficiary of the residuary estate, under the will of his father, was entitled to his full share. The court below, as his entire share in the fund did not equal his devastavit, held, that he was not entitled to participate until he had made restitution of the money wrongfully withheld from his co-legatees, and appropriated his share, $3,576.83, to the others to make good in part his waste. Mrs. Hill's share in her own right of this item was $814.37. She also had her share in Jacob's share of Mary's share by reason of the transfer of the two children, which was also appropriated on account of the devastavit, $227.10. She was also entitled to $161.45, as one of the assignees of Mary's children, in their share of Jacob's share. What portion of the fund was subject to attachment by Mrs. Hill's creditors depended on the nature of her right or title to it. As to the $3,576.83, her own share under her father's will, that, clearly, was impressed with a trust for her separate use, the income to be paid to her during her life; with a positive inhibition against pledging, parting with or anticipating the income; then a power of appointment by will in the beneficiary, and in default a bequest over. True, Mrs. Hill, at the date of the will, was a child, and the trust, if for protection during coverture alone, would not have been effective. But it went much further. It vested the legal title in the trustee and im-

posed upon him active duties; besides, part of the manifest intention was to protect the principal for her issue, and in default of issue increased by that much the shares of his other children.    As is aptly said by the court below, it is in the nature of a spendthrift trust for a married or unmarried woman; the principal is guarded against waste either by herself or a possible husband.    As such, the intention of the testator must be carried into effect, and the $3,576.83 held not subject to seizure by attachment even for her own debts.    We can add nothing of weight on this question, either by reason or authority, to the opinion of the learned judge of the court below.

The share of Mrs. Hill in the share of her brother Jacob, amounting to $726.52, was awarded to her under the trusts in the will.    The sum which Jacob had appropriated to his own use was clearly protected by the trust from creditors.    The court having before it the fund, the parties and the facts, in the administration of equity substituted Jacob's share for that out of which he had wronged his sister.    If the money withheld was not attachable, as it clearly was not, that which took its place was also protected; under the authority of the will, Jacob had received his sister's money; by the authority of the will, when opportunity presented, the court restored it to her, because in equity it was hers; the identity of the money, by the misappropriation of it, was gone, but as soon as restored, its identity as a trust fund was unaffected; it was still the fund which the testator directed "should not be subject to execution, attachment, sequestration, or adversary proceedings of any sort for her own debts or for any debts or liabilities whatsoever." Its character was in no way different from that of the $20,000, which had been recovered by suit from the sureties of defaulting trustee and then appropriated to the same beneficiaries as provided by the will.

The fifth assignment of error is to the award of $726.52 to the administrator of Mary Agnes Seitzinger.    The reason for this award, as stated by the court, is to equalize her share with those of the others affected by the devastavit.    The accrued income of her share up to the date of her death, to which date her personal representative was entitled to receive it, had not been awarded her from the proceeds of the bond of the trustee equally with the other distributees; to promote such equality,

the court, from this portion of the restored money realized from Jacob's share in Elizabeth's share, awards Mary's share to her administrator, to wit, $726.52. The money was income due and payable to Mary Agnes during her lifetime by her brother. If it had been actually received and in her possession at her death, it would unquestionably have passed to her representative; the fact that he wrongfully retained it in his possession affected not the nature of her right to it, and it is in accord with sound legal principles to treat, in distribution, that as absolutely her own, when there was nothing but the unwarranted physical possession of it by her brother to indicate otherwise. In view of the reasons given by the court below, we cannot say such award was not justified, and the assignment is overruled.

This leaves as passing by the will of Jacob Seitzinger, and protected by the trusts therein created, Emma B. Hill's own share in the fund set apart for Elizabeth, $3,576.81; her own share in Jacob's share, withheld from him to make good his devastavit, $814.37. The balance of the fund awarded to her, and to which the trust has no application, $1,229.52, is subject to the lien of the attachment and goes to her creditors, these appellants.

This is the conclusion of the court below, and in pursuance of it distribution was made accordingly. We fail, after a thorough examination, to discover any error of fact or law in the decree. Therefore it is affirmed, and the appeal is dismissed at costs of appellants.