## Miller's Appeal.

52　113
170　528

1. Devise to a daughter for life, at her death to be sold and the money from the sale " to be equally divided between the lawful issue of my said daughter Esther (if any she should leave, and if more than one). But if my said daughter Esther should die without leaving lawful issue, then the money shall be equally divided between all my other children, or their respective legal representatives." Esther had an illegitimate daughter at the date of the will, who was afterwards, in her mother's lifetime, legitimated by Act of Assembly. *Held*, that she was " lawful issue."

2. The daughter was married and had children before she was legitimated, and died in Esther's life, who afterwards died leaving her daughter's children. *Held*, that these children took as " lawful issue" of Esther.

3. If there be nothing in a will to limit " issue" to children, it is synonymous with *descendants.*

Appeal by John Miller from the decree of the Orphans' Court of *Lancaster county*, confirming the report of the auditor, D. G. Eshleman, Esq., distributing the balance in the hands* of the administrator *cum testamento annexo* of Peter Miller, deceased.

Peter Miller, by his will, proved May 25th 1813, gave to his wife Mary the house where he resided, with eight acres adjoining, for her life, and further provided : " I do order and direct, that my said son Tobias retain the sum of one hundred and fifty pounds until my daughter Esther's female child shall arrive at the age of

2 P. F. Smith—8

twenty-one years, at which time the same (together with interest at the rate of five per cent. per annum) shall be paid by him to her, which said sum of one hundred and fifty pounds shall be deducted out of the share hereinafter bequeathed to my said daughter Esther." * * * " From and immediately after the decease of my wife Mary, I do give, devise and bequeath unto my daughter Esther Miller, the house and piece or parcel of land hereinbefore devised to my said wife Mary, during the term of her natural life, and at her decease I order and direct that the said house and piece or parcel of land shall be sold by my executors hereinafter named, or the survivors or survivor of them, whom I hereby authorize and empower to execute and deliver a good and sufficient deed in fee simple for the same. And the money arising from the sale thereof, I order to be equally divided between the lawful issue of my said daughter Esther, if any she should leave, and if more than one ; but if my said daughter Esther should die without leaving lawful issue, then I order that the money arising out of the said house and piece or parcel of land hereby ordered to be sold, shall be equally divided between my other children or their respective legal representatives."

The child of his daughter Esther, whose name was Rachel, was illegitimate. The testator's widow died in 1820. Rachel afterwards married Gottlieb Grilbortzer, and on 31st March 1854 an Act of Assembly was passed, providing that " Rachel Grilbortzer shall have and enjoy all the rights and privileges of a child born in lawful wedlock, and shall be able and capable in law to inherit and transmit any estate whatsoever, as fully and completely and to all intents and purposes, as if she had been born in lawful wedlock." She died 24th May 1854, leaving five children, viz.: Esther Ann, Mary Margaret, Rachel Eliza, Rebecca Sarah and Frances Salome Grilbortzer. Esther Miller died 4th January 1865.

The land was sold after Esther Miller's death, and the proceeds were claimed by the children of Rachel as " lawful issue" of Esther, and by the heirs of testator, who contended that Esther left no lawful issue. The auditor reported in favour of Rachel's children. The court confirmed the report, which was the error assigned.

*J. Landis* and *A. Herr Smith*, for appellant.

*G. M. Kline* and *J. E. Hiester*, for appellees, cited Killam *v.* Killam, 3 Wright 120.

The opinion of the court was delivered, June 25th 1866, by
Woodward, C. J.—When Peter Miller made his will in 1811, his unmarried daughter Esther had an illegitimate daughter. He charged the land devised to his son Tobias with the payment of 150*l.* to Esther's female child when she should become 21 years of age, which said sum was to be deducted out of the share afterwards bequeathed to Esther.

From and immediately after the death of his wife Mary, the testator gave to said Esther for life the house and piece of land which his wife was to occupy till her death, and at the decease of the said Esther, his executors were to sell the premises, "and the money arising from the sale thereof, I order to be equally divided between the lawful issue of my said daughter Esther (if any she should leave, and if more than one). But if my said daughter Esther should die without leaving lawful issue, then I order that the money arising out of the said house and piece or parcel of land, hereby ordered to be sold, shall be equally divided between all my other children, or their respective legal representatives." The said house and piece of land to be charged to Esther, at and for the sum of 400*l*. specie.

The disposition of the fund plainly depended upon Esther's leaving lawful issue. If she left lawful issue it was to go to them; if she did not it was to go over to her brothers or their heirs. And by lawful issue the testator must have meant something more than "the female child," as he very gently styles her illegitimate daughter, for he had already made specific provision for her. These words lawful issue are of common occurrence, and have been interpreted in innumerable cases, and since there is nothing in the testator's language to indicate that they should be restricted to children or bent from their established legal meaning, we are bound to accept them as meaning in this will just what they have been usually held to mean in other wills. Although Rachel, Esther's female child, was a bastard, and therefore incapable by nature to be accounted lawful issue, yet, before she, died she was married and had legitimate children of her own, and on the 31st day of March 1854 was legitimated as the daughter of Esther Miller, and made "*capable in law to inherit and transmit any estate whatsoever, as fully and completely and to all intents and purposes, as if she had been born in lawful wedlock.*" Then she died leaving five children, who are the appellees on the record.

More than ten years afterwards her mother, Esther Miller, died unmarried and without other children. Now, it is evident that if Rachel had survived her mother, she would have been lawful issue within the meaning of the will, because, though not so by nature, she was made so by the supreme legislative power of the state. If the legislature can remove the taint of blood and make it inheritable, they did so in this instance. They declared that she should be as competent to inherit and transmit any estate whatsoever as if she had been born in lawful wedlock; and had she been born in lawful wedlock she would have inherited and transmitted this estate. And that, too, whether the words "lawful issue," be taken as words of limitation or of purchase. If they were words of limitation and the devise had been of real estate, Esther would have taken an estate tail, and words which create an estate tail in real estate confer an absolute title upon the first taker in respect of personal estate. But if they were words of purchase and not of limitation, then, had Rachel survived her mother, she would have taken under

[Miller's Appeal.]

the designation of lawful issue, directly from the testator by virtue of the Act of Assembly. Nor can this fairly be called a making of a new will by Act of Assembly forty years after the death of the testator. He must be presumed to have meant his words should have their appropriate legal effect, and at all times it is the province of the law-making power to define who shall be lawful issue. The law of every country regulates the succession to estates on the death of its citizens. The testator referred himself to the law for ascertainment of lawful issue. We do not therefore change his will when we say, it would have operated in favour of Rachel had she survived her mother. We simply give effect to the Act of Assembly, and like effect to the will.

But though *Rachel* may have been capable to be treated as lawful issue of Esther, our question is, can her *children* be so treated ? All the compilers whom I have consulted agree in stating as the result of the authorities, that if there be nothing in the will to limit the word issue to children, it will embrace grandchildren and great-grandchildren. Thus in Ward on Legacies, p. 107, we read that the word issue may and frequently does mean children only, but if there is nothing to show that the testator used it in this confined sense, it has always, as a word of purchase, been considered as synonymous with descendants; and whoever can make himself out a descendant of the person to whom the bequest is made, has a right to be considered as *persona designata* in that bequest. And Hays, at p. 15 of his Essay, says, that the word issue is *ex vi termini* descriptive of all the issue of every generation to come, being so understood in common parlance. And he cites Lord Eldon's observation in Sibley *v.* Perry, 7 Ves. 522, that upon all the cases this word issue, *primâ facie*, will take in descendants beyond immediate issue. Said Sir William Grant, M. R., in Leigh *v.* Norbury, 13 Ves. 340, it is clearly settled that the word issue unconfined by any indication of intention, includes all descendants. Intention is required for the purpose of limiting the sense of the word to children only. In 2 Williams on Executors, p. 999, it is said when the description " issue" is employed in a will as a word of purchase, it will in its ordinary import comprise all those who can claim as descendants from or through the person to whose issue the bequest is made—*i. e.*, grandchildren and great-grandchildren as well as children—and in order to restrain this usual sense of the word a clear intention must appear upon the will.

Authorities to the same effect might be multiplied, but these are enough to justify our conclusion, that the children of Rachel are as capable of taking under the words " lawful issue" as she herself would have been. Whether they be considered as taking from her or their grandmother by succession, or directly from the testator by purchase, they are included in the word issue. Themselves legitimate, and their mother's taint eradicated, the will has free scope for the very purposes it expressed.

The decree below is affirmed.