## Samuel Pickens's Estate.    Jos. Obenstein's Appeal.

*Evidence—Marriage—Reputation.*

Common reputation in a family connection as to who are members of the family is admissible when no superior evidence is attainable, or in connection with superior evidence, to prove pedigree, legitimacy and marriage.

*Decedent—Intestate laws—Evidence—Presumption.*

Where an estate is claimed by first cousins of decedent, and also by persons claiming as children of his half-brother whose legitimacy is denied, there is a presumption of marriage and legitimacy notwithstanding such denial, which is strengthened by lapse of time, and after ninety years it cannot be overcome except by strong, direct and satisfactory proof.

In such a case witnesses on behalf of the children of the alleged half-brother testified to declarations of decedent, and of deceased sisters and mother of decedent that the claimant's father was the half-brother of decedent. Other witnesses testified to declarations of decedent's mother that she was married to claimant's grandfather. These declarations were made ante litem motam, and no evidence was offered to contradict them. *Held,* that these declarations, made long before any litigation arose, by persons related to the family and now dead, being the only proof of which the subject was susceptible, were, although hearsay, competent and conclusive. *Held,* also, that while the burden of proof was upon claimants to establish their relationship to decedent, they were not confronted with the presumption of the illegitimacy of their ancestor, nor required to disprove it.

Argued May 31, 1894.    Appeal, No. 26, July T., 1894, by Joseph Obenstein, from decree of O. C. Lancaster Co., dismissing exceptions to report of auditor.    Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.    Reversed.

Exceptions to adjudication of administrators' account.

From the evidence taken before the auditor, J. W. Denlinger, Esq., it appeared that decedent, who died in 1882, was the son of Henry Pickens and Susan Pickens, whose maiden name was Brockey.    Susan Pickens, previous to her marriage to Henry Pickens, had lived with one John Obenstein, by whom she had two sons; the first one died in his infancy, and the second son, named Benjamin Obenstein, was married, and had

four children.. These four children of Benjamin Obenstein claimed before the auditor the personal estate of decedent as nearest of kin.   This claim was resisted by the next of kin of the whole blood, the issue of one uncle and three aunts, who claimed that John Obenstein was never married to Susan Brockey, and that their son, Benjamin, was illegitimate.

The auditor reported in part as follows :

" That the said Benjamin Obenstein was the son of Susan Brockey, prior to her becoming the wife of Henry Pickens, the father of decedent, is virtually admitted by all concerned, and it is a conceded fact that John Obenstein was his father.

" Whether Susan Brockey was the lawful wife of John Obenstein at the time of the birth of Benjamin Obenstein, or not, is the question raised and to be decided.   The evidence discloses nothing to show that John Obenstein and Susan Brockey were ever married by a minister or magistrate, nor was their marriage proved by satisfactory evidence of reputation and cohabitation.   Not a single witness was called who knew anything of the life of either of them before Susan became the wife of Henry Pickens.   The most that was proved to establish the fact of marriage was the declarations of the decedent to the witness, Isaac Zern, when he remarked to him some twenty years ago that Benjamin Obenstein was his half-brother; that when Benjamin died he said his half-brother had died; that when decedent's sister Betsy died he directed the witness to go for the preacher to conduct the funeral services and to send a postal card to each of his half-brother's (Benjamin's) children.   He told the same witness on another occasion that his father, Henry Pickens, had to pay too much when old Obenstein came back, so that he would go away again ; that old Obenstein was a German, and that when he landed in this country he was indebted for his passage across the ocean ; that Obenstein came to his mother's home and married her, and her father finding that Obenstein was not free he went and paid the fare for Obenstein and then wanted Obenstein to work two years for him.   Then, he continues, Obenstein went off, and upon returning later, found that Susan was living with Henry Pickens, father of decedent, who had to pay him twenty dollars to go away again.   In this the witness is corroborated by his wife, Leah Zern.   In addition to the above, claimants called

as a witness Susanna Obenstein, widow of the said Benjamin Obenstein, who is now about eighty-eight years of age, by whom were proven certain declarations made by Susan Brockey (then Pickens), and among other things witness asked her, how is it that Benjamin is called Obenstein and he was raised by Pickens?   She replied, my first husband's name was Obenstein; we lived together not a year and had a little boy, but that he did not live long; then we lived together a couple of years longer and got another little boy, and we raised that one and you have him for a husband; that Benjamin often spoke of Samuel, the decedent, and his sisters as his half-brother and half-sisters, and they spoke of him as their half-brother, and that she often spoke of her having been married to Obenstein before she was married to Pickens; that decedent spoke to witness of the relationship and of Benjamin as his half-brother.   And by Rev. A. J. Bachman it was proved that decedent spoke of Benjamin as his half-brother and of his children as those of his half-brother.

"This is substantially and in fact all that was proved by the claimants to make out their case.   The auditor has disregarded the testimony of Elizabeth Garrett, one of the claimants, she being regarded as an incompetent witness.

"Are the facts as above stated sufficient in law to establish the fact of the marriage of Susan Brockey and John Obenstein, and thereby establish the relationship alleged by claimants?

"The question of what the law requires even to ground a presumption of marriage is discussed in the case of Commonwealth v Stump, 53 Pa. 134. . . .

"Unequivocal and frequent admissions of marriage accompanied by long continued cohabitation and reputation are frequently most satisfactory evidence of marriage: Vincent's Ap., 60 Pa. 228.   Marriage may be proved in civil cases by reputation, declaration and conduct of the parties, and other circumstances accompanying that relation: 2 Greenleaf's Ev. § 462.

"The auditor does not agree with counsel for claimants that the principle of presumption of legitimacy must prevail here, and that the burden of proof to the contrary is upon those who allege otherwise.   That, we say, would be the case where there is no question as to the marriage of the parties.   In this case

the very essential to the legitimacy of Benjamin Obenstein, the son of Susan Brockey, namely, the marriage of herself and John Obenstein, is denied, and that being so it falls upon those alleging the fact of marriage to prove it either by proof of actual and formal ceremony or by proof of reputation and cohabitation: Com. v. Stump, supra; vide also Langtry v. State, 30 Ala. 536; Squire v. State, 46 Ind. 459; State v. Wilson, 22 Iowa, 364; Com. v. Jackson, 11 Bush, 679; Blasini v. Blasini, 30 La. An. 1388; Cayford's Case, 7 Ill. 157; State v. Armington, 25 Minn. 29; Commonwealth v. Holt, 121 Mass. 61.

" The auditor regrets that the testimony throws so little light on the question, but if the claimants have failed to make out their case by sufficient and satisfactory evidence, it is their misfortune and not the fault of the law. We therefore say in conclusion that claimants have failed to show by sufficient and satisfactory competent evidence that their father was a step-brother of decedent, and they are accordingly not entitled to receive the fund they seek to have awarded to them."

Exceptions by appellant were dismissed by the court.

*Errors assigned* were dismissal of exceptions, and decree.

*W. T. Brown* and *Howard C. Shirk*, for appellant.—The rules of evidence governing cases of this kind as laid down in the text-books and in the decisions of our Supreme Court are: (1) that the statements must be made ante litem motam; (2) declarant must be dead; and (3) a prior condition to both these is, that it should be proved by some source of evidence independent of the statement itself that the person making the statement is related to the family about which he speaks: Sitler v. Gehr, 105 Pa. 599; 1 Whart. Ev., p. 209; Ib. §§ 201, 216; Greenl. Ev., 15th ed. §§ 103, 104; 18 A. & Eng. Ency. L., pp. 257, 259, 260, 261, 263, and note; Ins. Co. v. Rosenagle, 77 Pa. 507; Adams v. Edwards, 115 Pa. 216.

The proof being equal, the presumption is in favor of innocence; and so far is this carried, in the case of conflicting presumptions, that the one in favor of innocence shall prevail: Senser v. Bower, 1 P. & W. 452; Simpson's Est., 4 Del. Co. R. 129; Vincent's Ap., 60 Pa. 246.

An additional circumstance in the present case must be con-

sidered as raising of itself a presumption of fact which in the absence of proof to the contrary is binding. It is the fact that Benjamin Obenstein was called " Obenstein " after his father

*T. J. Davis* and *Wm. D. Eberly, A. J. Eberly* with them, for appellee.—Assuming for the sake of argument that appellant has proven, as he claims he has, the marriage of Susan Brockey to John Obenstein before Henry Pickens married her, then, as there is no evidence whatever that a divorce has been obtained by her from John Obenstein before she married Henry Pickens, and it being in evidence that John Obenstein was living after Susan married Henry Pickens, then the issue of Henry Pickens and Susan, one of whom is the decedent, Samuel Pickens, would be illegitimate and the appellant would have no standing to inherit from him, his mother Susan Pickens having died before him : Acts of April 27, 1855, P. L. 368 ; June 5, 1883, P. L. 88 ; Steckel's Ap., 64 Pa. 493 ; Grubb's Ap., 58 Pa. 55 ; Woltemate's Ap., 86 Pa. 219.

OPINION BY MR. JUSTICE FELL, July 11, 1894 :
The contest in this case before the auditor was between those claiming the personal estate of Samuel Pickens as descendants of first cousins, and those claiming as children of Benjamin Obenstein, who it was alleged was a half-brother of the decedent. It was admitted that Benjamin Obenstein and Samuel Pickens were children of the same mother, that the father of the former was John Obenstein and of the latter Henry Pickens. The marriage of their mother to Henry Pickens was amply established by proof of cohabitation and reputation, and the question was whether she had previously married John Obenstein.

Benjamin Obenstein was born in 1806, and Samuel Pickens in 1812. Eighty-seven years had elapsed between the birth of the former and the time when the marriage of his parents was questioned, and there was no living witness or documentary evidence of either marriage. It was therefore a case in which pedigree could be proved only by hearsay, and it was clearly competent to prove it in that way. " Common reputation in a family connection as to who are members of the family is admissible when no superior evidence is attainable, or, in connection with superior evidence, to prove pedigree, legitimacy and marriage." Wharton's Evidence, vol. 1, sec. 205.

The relationship of the persons who made the statements, their death, and the fact that the statements were made ante litem motam were established by competent testimony; and there was for consideration by the learned auditor only the sufficiency of the proof.

It was testified by witnesses not connected with the family, Isaac Zern and Leah Zern, that Samuel Pickens, some twenty years before his death, had introduced Benjamin Obenstein to them as his half-brother, and had afterwards spoken of him as his half-brother, and of his children as the children of his half-brother, and that he had said to them that his mother was first married to John Obenstein.

Susanna Obenstein, the widow of Benjamin Obenstein and mother of the appellant, testified that at the time of her marriage she was told by her mother-in-law, Susan Pickens, that her first husband was John Obenstein, that they had two children, one of whom died and the other of whom was Benjamin Obenstein; that she and John Obenstein lived together three years, and that he died when Benjamin was quite young. She also testified that the previous marriage to Obenstein was frequently spoken of in the family, and the relationship of Benjamin Obenstein and Samuel Pickens fully recognized by both and by all the members of the family.

There is not one word in contradiction of this testimony, the effort of the appellees being directed to show the marriage of Henry Pickens and Susan Pickens. There is nothing in the testimony which suggests a doubt as to the legitimacy of Benjamin except the statement, said to have been made by Samuel Pickens, that John Obenstein after the birth of Benjamin had gone away, and afterward returned when his wife was living with Henry Pickens, who had paid him to go away again. This statement must be taken in connection with the declaration made at the same time that Susan Pickens had been married to John Obenstein before her marriage to Henry Pickens; and if illegitimacy is to be inferred from it the taint is not in the Obenstein line of descent.

In such an inquiry as this there is always a presumption in favor of marriage, which is strengthened by lapse of time; and after ninety years it cannot be overcome except by strong, direct and satisfactory proof.

Benjamin Obenstein was admittedly the second child of a man and woman who had lived together for some time previous to his birth in 1806.   There was testimony that his mother had said that she was married to his father, who died, and that she afterward married a second time.   He was brought up in the house of her second husband, and treated as were the children of her second marriage, and retained the name of his father. He was recognized in the family as a half-brother, and this relationship was acknowledged and spoken of by the decedent, and he was treated as such until his death in 1880.

. The learned auditor held that, the marriage being denied, the presumption of the legitimacy of the issue did not prevail, and that the burden of proof was upon the appellant, and that the proof offered was insufficient to support his claim.   To sustain this finding he cited Commonwealth v. Stump, 53 Pa. 134.   In that case there was no proof of an actual marriage, and all the facts established at the trial rebutted the presumption of marriage until after the birth of the children.   There was cohabitation, but the reputation was that there had been no marriage. Upon the facts of that case this court held that proof of cohabitation alone, without reputation, was not sufficient to establish a marriage.

In this case the burden of proof, to establish his relationship to the decedent was upon the appellant, but he was not confronted with the presumption of the illegitimacy of his ancestor, and not required to disprove it.   In the absence of all evidence the presumption was the other way, and after this lapse of time could not have been removed except by clear proof.   There was nothing in the admitted facts upon which his right prima facie rested, to suggest the illegitimacy of any one in either line of descent.   Their common ancestor, Susan Pickens, had at different times lived with John Obenstein and Henry Pickens, and had borne children to each.   The cohabitation with one commenced fully ninety years ago, and that with the other a few years later.   The last survivor of these persons died over thirty years ago.   There was no distinct evidence of a marriage to either, but presumably she was the lawful wife of each.   Such a presumption is entirely consistent with the facts as established by the testimony, but if conflicting presumptions arose that in favor of innocence and legitimacy

would prevail.  It was error to hold that the simple denial of marriage before the auditor, without a word of testimony upon the subject, imposed upon the appellant the burden of the proof of the legitimacy of his ancestor.  This burden however he accepted, and offered the only proof of which the subject was susceptible, which, although hearsay, was competent and conclusive.  This was by evidence of statements made long before any litigation arose, by persons related to the family and now dead.  These statements establish the first marriage, the cohabitation, the birth of issue, the death of the first husband, the second marriage, the birth of children by that, and the recognition, during the lives of all these parties, of the relationship between the decedent and the father of the appellant. This testimony throughout was clear, distinct and consistent, and no attempt was made to contradict it.  The only doubt suggested was by the statement of Samuel Pickens that John Obenstein returned after the marriage of Henry Pickens to his mother and was paid to go away.  It must be remembered that in the same connection he said that his mother had been married to John Obenstein, and that he was speaking of a matter of which he had no personal knowledge.  There is nothing in this to give rise to the presumption of the illegitimacy of Benjamin Obenstein, and there is nothing else in the case upon which such a conclusion can be based.

We are of opinion that the fair conclusion from the whole testimony is that Benjamin Obenstein and Samuel Pickens were half-brothers, the legitimate children of Susan Pickens.

The assignments of error are sustained, and the decree of the Orphans' Court of March 29, 1894, dismissing the exceptions to the report of the auditor, is reversed and set aside at the cost of the appellee, and the matter is referred back to the auditor that distribution may be awarded in accordance with this opinion.