## Vetter's Estate.

Argued April 21, 1932. Before FRAZER, C. J., SIMP-SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Earl W. Thompson,* with him *John M. Abbott,* for appellant.—From the final decree of divorce obtained in the Nevada court by the appellant no appeal has been taken and it follows that the full faith and credit clause of the federal Constitution comes into operation and the recognition of the decree in the courts of Pennsylvania becomes a constitutional right: Laing v. Rigney, 160 U. S. 531; Hampton v. McConnel, 3 Wheaton 234; Sistare v. Sistare, 218 U. S. 1; Barber v. Barber, 21 Howard 582; Andrews v. Andrews, 188 U. S. 14.

The decree of divorce granted to the appellant by the Nevada court is regular on its face and cannot be im-

peached by the trustees and guardian ad litem in a collateral proceeding here in the Orphans' Court of Philadelphia County: Bank v. Poore, 231 Pa. 362; In re Gottesfeld, 245 Pa. 314; Metzger's Est., 242 Pa. 69; McDonald's Est., 268 Pa. 486.

It was the kind of divorce intended by the testator in the codicil to his will and it satisfies the condition therein to terminate the trust: Arnold v. Muhlenberg College, 227 Pa. 321; Holbrook's Est., 213 Pa. 93.

*R. W. Archbald, Jr.*, with him *Frederick L. Breitinger*, for appellees.—The alleged residence of Rose Van Dusen in Nevada was not in good faith, and was no residence at all, and the Nevada court had no jurisdiction of the subject-matter, i. e., her marital status. The divorce decree was, therefore, void: Halpine v. Halpine, 52 Pa. Superior Ct. 80; Lyon v. Lyon, 13 Pa. Dist. R. 623; Guthrie v. Lowry, 84 Pa. 533; Price v. Schaeffer, 161 Pa. 530; Noble v. Thompson Oil Co., 79 Pa. 354; Thompson v. Whitman, 18 Wall. 457; Knowles v. Gaslight and Coke Co., 19 Wall. 58.

The Nevada divorce was collusive and a fraud upon the testator's will, the remaindermen and the orphans' court.

A familiar instance is found in the case of collusive judgments in fraud of creditors which are open to collateral attack by the persons defrauded: Appeal of Second National Bank of Titusville, 85 Pa. 528; Palmer v. Gilmore, 148 Pa. 48; Otterson v. Middleton, 102 Pa. 78; Bole v. Belden Transmission Co., 239 Pa. 1.

OPINION BY MR. JUSTICE KEPHART, June 30, 1932:

Casper Vetter died in 1925, and by his will devised one-third of his residuary estate to his sons, one-third to one daughter, and the remaining one-third in trust to pay the income to his other daughter, Rose Vetter, for life, with remainder to her children; but, if Rose Vetter's husband died, or "in case of her divorce from him,"

"the principal of the trust estate......shall be paid to her absolutely and in fee simple."

Rose Vetter married Charles Van Dusen of Colorado in 1914. They lived in that state seven years and then moved to Los Angeles, where they have since been domiciled. They have two minor children. In December, 1928, Rose Van Dusen, claiming a divorce by decree of a Nevada court, petitioned the Orphans' Court of Philadelphia County for a citation on the trustees to file an account. In the petition she declared that because of the divorce she was entitled to the estate held in trust. On this petition, the orphans' court appointed a guardian ad litem for the children, and their guardian, together with the trustees, filed answers. The proceeding was referred to a master, who found that the Nevada court had no jurisdiction to grant a divorce to the petitioner since her residence in the State of Nevada was solely for the purpose of obtaining the divorce.

After some intermediate proceedings, the lower court affirmed the master's finding on jurisdiction, but also held that it was competent to determine whether fraud was practiced in the proceedings brought in this State to terminate the trust. It found, and its finding is amply supported by the uncontradicted evidence, that the conduct of appellant was "an attempt to commit a bare-faced fraud on this court." It stated, "We are satisfied that the divorce was obtained solely for the purpose of terminating the trust. This court will not countenance such a proceeding, nor will it lend its aid to defeat the manifest intention of the testator through reliance upon a proceeding brought solely for the purpose of defeating such intention." The petition was dismissed.

The argument of appellant in this court vigorously attacks the finding of the master and the court below that the Nevada court was without jurisdiction to grant a divorce. She points out that all the jurisdictional questions, particularly the ones relied on by the court

below to defeat that jurisdiction, were submitted to and determined as questions of fact by the Nevada court, and that the case of Andrews v. Andrews, 188 U. S. 14, strongly relied on, would not control for the reason that all there decided was that the announced public policy of the State of Massachusetts would be enforced, and that therefore, under the "full faith and credit" clause of the federal Constitution, the decree of the Nevada court should be recognized in this proceeding, and cannot be attacked in this collateral matter.

We need not discuss this interesting question, for there is another ground on which the decree of the court below may be affirmed. The testimony amply sustains the conclusion that the acts of appellant and her husband were attempts to perpetrate a fraud on the court and the remaindermen under Casper Vetter's will.

Rose Van Dusen was dissatisfied with her father's will; she consulted counsel; and thereafter told several persons she and her husband had been advised to obtain a divorce; that they intended to do this and be remarried after her share of the estate had been secured. As stated by the court below "one witness testified that she had known petitioner for many years, since petitioner was a little girl; and she had a talk with her in 1926, after testator's death, with regard to the will; petitioner thought the will very unfair and said she 'knew how to get around the will so that she could come into the money. ...... I can get a divorce from Charles and after I come into my part of the will I will marry him again.'" The plan was outlined for securing the divorce.

The purpose of the acts on which the divorce proceeding hinged was not to secure a divorce which would separate the parties forever as divorces usually do, but it was simply a means by which the estate could be obtained. The divorce was a necessary incident in a concerted plan to frustrate the will. In considering the effect of the acts of appellant and her husband, as they

bear on the proceeding to terminate the trust, all steps must be considered, and the decree of divorce was merely a link in the chain of fraud. We start with the will, appellant's relation and conduct toward it, her desire to avoid its consequences, the legal aid obtained for this purpose, the procurement of the divorce without legal ground, and the attempted termination of the trust. The result of all these acts constituted a fraud on her children and on the court.

Generally speaking, judgments cannot be impeached by strangers for any cause, but where some preëxisting right of theirs would be prejudiced if the judgment is given full "faith and credit," strangers are then permitted to set up fraud and collusion in the procurement of that judgment. "Hence the rule that whenever a judgment or decree is procured through the fraud of either of the parties, or by the collusion of both, for the purpose of defrauding some third person, such third person may escape from the injury thus attempted by show-- ing, even in a collateral proceeding, the fraud or collusion by which the judgment was obtained: Michaels v. Post, 21 Wall. 398.

It was stated in Mitchell v. Kintzer, 5 Pa. 216, 217, "But in the eye of the law, fraud spoils everything it touches...... Every transaction of life between individuals, in which it mingles, is corrupted...... Why then, should it find shelter in decrees of courts? *There* is the last place on earth where it ought to find refuge. But it is not protected by record, judgment, or decree; whenever and wherever it is detected, its disguises fall from around it, and the lurking spirit of mischief, as if touched by the spear of Ithuriel, stands exposed to the rebuke and condemnation of the law. The learned counsel contended, however, that the record is fair and regular. It is true that on the face of the record there is no evidence of covin or deceit. But it is without the record that the evidence is alleged to exist." This principle was reaffirmed in part in Rubinsky v. Kosh, 296 Pa. 285, and

a survey of the cases fully answer appellant's contention. See also Rubinsky v. Kosh, 301 Pa. 35; Automobile Securities Co. v. Wilson, 301 Pa. 232; Culbertson's Est., 301 Pa. 438. The full faith and credit clause of the federal Constitution does not prohibit an inquiry into all the circumstances touching a matter cognizable solely in our courts even though the decree or judgment of a court of another jurisdiction is involved in that investigation; and if fraud underlies such judgment or decree it will be of no effect in deciding the matter before the court. Therefore under the allegation of fraud all reasons, acts, or conduct underlying or making up the decree or judgment are open to investigation when the effect of such decree or judgment is to prejudice the rights of third parties not parties to it.

If the wife had a real cause or valid ground for divorce, the fact that she exercised that right and procured a decree solely to fulfill the condition of the testator's will, and was happy because of the opportunity to do so, would not affect her right to take the property under the terms of the will. If one has the legal right to do a particular thing, the law will not inquire into his motive for doing it: Beirne v. Continental-Equitable Title & Trust Co., 307 Pa. 570, citing Jenkins v. Fowler, 24 Pa. 308; Vitagraph Co. v. Swaab, 248 Pa. 478; Roush v. Herbick, 269 Pa. 145; McDermott v. Reiter, 279 Pa. 545; Titusville Amusement Co. v. Titusville Iron Works, 286 Pa. 561. But that is not our case; what happened here was that the parties deliberately set out to defeat the will of appellant's father; they agreed on a program which included going into another state, getting a divorce, presenting a petition to terminate the trust, securing the fund, and then remarrying after this was accomplished. Thus the will would be set aside, the rights of the remaindermen defeated, and the court below made a mere conduit for fraud. Such conduct cannot be tolerated in a court of justice.

454

Moreover, what the testator undoubtedly meant was a divorce obtained in a proper manner. He did not contemplate a divorce obtained merely for the very purpose of defeating his will and the rights of the remaindermen, and a divorce after the granting of which the parties would remarry. What we have discussed covers the questions involved.

The decree of the court below is affirmed.