Thorn Estate.

604

Argued January 8, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Leslie M. Swope,* with him *Roland Fleer,* for appellants.

*Gilbert W. Oswald,* with him *Wm. A. Schnader, Schnader, Kenworthey, Segal & Lewis* and *Wm. E. Lingelbach, Jr.,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, March 25, 1946:

A family group, entitled to a share of the income arising from the trust provisions of a decedent's will, are here attempting to exclude the children of one of the deceased life beneficiaries from also sharing therein, on the ground that they are illegitimate.

The testator, George W. Thorn, died in 1886. By his will he left his residuary estate in trust for three sisters and six nephews and nieces for their respective lives, the trust to continue until the death of the last survivor; meanwhile, upon the death of a sister her share of the income was to go to the surviving sisters, nephews and nieces and the issue of then deceased nephews and nieces; upon the death of a nephew or niece his or her share of the income was to go to his or her then living issue until the termination of the trust, at which time the principal was to vest in the then living children of the nephews and nieces and the issue of any then deceased children per stirpes.

Only one of the original life tenants, Mary G. Skinner, a niece, is still living and receiving a share of the income. George W. T. Snare, the son of John T. Snare, a deceased nephew, is now receiving his father's share. A niece, Annie S. Bullock, died in 1926 survived by a son George A. Bullock, who received his mother's share until his own death in 1943. Upon George A. Bullock's death the trustees of the Thorn estate filed an account in the adjudication of which the present controversy arose as to the distribution of the accrued income; one share is admittedly payable to Mary G. Skinner and another to George W. T. Snare; the third share is claimed by Bullock's children,—a claim disputed by Mary G. Skinner, her children and grandchildren, who would have the income divided only between her and George W. T. Snare. The court below rejected the contention of the Skinners and allotted a one-third share to the Bullocks. The Skinners appeal from that award.

George A. Bullock was married in 1895 to Anna Hooley, and by her had one child who predeceased him leaving no issue. In 1903 he left Philadelphia, where he had previously resided, and went west; in 1920 he established his domicile in Elkhart County, Indiana, where he lived for the remainder of his life, a period of nearly 24 years. In 1907 he began a cohabitation with one Margaret Omlor which continued until his death, and by her had nine children, the last of whom was born in 1923 and of whom seven survive; these seven, claiming the share of the income previously enjoyed by their father, are the present appellees. Their legitimacy depends primarily upon the validity of a divorce from his wife Anna which Bullock obtained in 1929 and which is the target of the Skinner attack. Promptly after that divorce was granted Bullock married Margaret Omlor, and appellees claim they were legitimated by reason of that marriage.

Our consideration of the case properly starts with a recognition of both the factual presumption that children are legitimate and the rule that, to overcome it, there is required clear, direct, satisfactory and irrefragable proof to the contrary: *Senser v. Bower,* 1 P. & W. 450; *Thewlis's Estate,* 217 Pa. 307, 66 A. 519; *McAnany's Estate,* 91 Pa. Superior Ct. 317; *May's Estate,* 141 Pa. Superior Ct. 479, 484, 15 A. 2d 569, 571.

It is an elementary principle that when a judgment or decree of a court having jurisdiction of the parties and the subject-matter is challenged in another State "the full faith and credit clause of the Constitution precludes any inquiry into the merits of the cause of action, the logic or consistency of the decision, or the validity of the legal principles on which the judgment is based": *Milliken v. Meyer,* 311 U. S. 457, 462. It is equally beyond question, however, that the jurisdiction of the court is always open to collateral inquiry, for where there is no jurisdiction all the acts of the tribunal are void. Decrees of divorce, being no exception to this

rule, may be collaterally impeached in another State for want of jurisdiction even though the record purports to show jurisdiction: *Williams v. State of North Carolina*, 325 U. S. 226; *Grossman's Estate (No. 1)*, 263 Pa. 139, 106 A. 86; *Commonwealth ex rel. v. Yarnell*, 313 Pa. 244, 251, 169 A. 370, 373; *Commonwealth ex rel. Esenwein v. Esenwein*, 348 Pa. 455, 35 A. 2d 335; *Commonwealth ex rel. Cronhardt v. Cronhardt*, 127 Pa. Superior Ct., 501, 505, 506, 507, 193 A. 484, 486, 487; *Commonwealth ex rel. Saunders v. Saunders*, 155 Pa. Superior Ct. 393, 396, 38 A. 2d 730, 731.\*

Appellants claim that the Indiana court which rendered the decree of divorce in favor of Bullock had no jurisdiction over his wife because she was not served with process and had no notice or knowledge of the proceedings until after the decree was entered. The Indiana law then in force (Act of March 13, 1879, ch. 45, p. 124) provided that "If it shall appear by the affidavit of a disinterested person that the defendant is not a resident of this State, the clerk shall give notice of the pendency of such petition by publication for three successive weeks in some weekly newspaper of general circulation, published in such county, . . . Provided, That the plaintiff shall, in case such notice is to be given by publication as aforesaid, before the same is given, file his or her affidavit with the clerk, stating therein the residence of the defendant, if such residence be known to the plaintiff, and if such residence be unknown to the plaintiff, such affidavit shall so state; and in case such affidavit state the residence of the defendant, the clerk shall forward, by mail, to such defendant the number of the paper containing such notice, with the notice marked." It is not contended that such a provision for notice by publication

---

\* A decree of divorce may also be impeached in a collateral proceeding if obtained by so-called "extrinsic" fraud or by collusion of the parties for the purpose of defrauding some third person: *Vetter's Estate*, 308 Pa. 447, 452, 162 A. 303, 304; *Commonwealth ex rel. v. Yarnell*, 313 Pa. 244, 251, 169 A. 370, 373; *Carey v. Carey*, 121 Pa. Superior Ct. 251, 256, 257, 183 A. 371, 373.

runs afoul of the requirement of due process; our own Divorce Law of 1929, P. L. 1237, §29, provides for a three weeks' publication if the respondent cannot be personally served (see also *Nixon v. Nixon,* 329 Pa. 256, 266, 198 A. 154, 160). But appellants assert that the affidavit which Bullock filed, in pursuance of the Indiana statute, that his wife's residence was unknown to him, was false and designed to prevent her from receiving actual notice of the proceedings. This contention involves a question of fact, and it is only fair to say that it would have been possible under the testimony for the auditing judge to have found that the affidavit was indeed false; however, the finding which he did make, after a careful and exhaustive analysis of all the evidence, was likewise justified, especially when it is borne in mind that the burden of proving the falsity of the affidavit was upon those who asserted it. In any event, the court in banc having sustained the auditing judge's finding that Bullock did not know his wife's address at the time he filed the affidavit and was not guilty of any fraud, we must accept that finding as conclusive. It is urged that the attorney who represented Bullock in certain warrant-of-seizure proceedings in the Municipal Court of Philadelphia which Bullock's wife instituted in November, 1928, undoubtedly had definite knowledge concerning her place of residence and that his knowledge should be imputed to Bullock, but the ordinary rule of agency to that effect is not applicable here where the question is one, not of constructive, but of actual knowledge on Bullock's part. It is further urged that Bullock could readily have ascertained his wife's address if he had made inquiry of his Philadelphia attorney, but, as the court below properly pointed out, the Indiana statute did not require the making of any investigation before filing the prescribed affidavit; in that connection it is interesting to note that by an amendatory Act of March 14, 1929, ch. 177, p. 575 (enacted after Bullock's divorce was granted) provision was made for alternative affidavits, either that the de-

fendant's residence was unknown or that *upon diligent inquiry* it was unknown. An affidavit filed by Bullock's Indiana attorney in the divorce proceedings that the defendant was not a resident of the State of Indiana is attacked on the ground that the attorney was not a "disinterested" person within the meaning of the statute; the court knew, however, that he was Bullock's attorney and therefore its acceptance of his affidavit as satisfactory indicates a judicial construction of the act contrary to that urged by appellants; moveover, Bullock's wife was not at any time a resident of Indiana and the affidavit was admittedly true. Objection is raised to the publication of the proceedings because made in a newspaper published in a small village of the county, but it is not suggested that such publication did not meet the statutory requirements. In short, notwithstanding the earnest efforts of appellants to find flaws, there is nothing of sufficient substance in their objections to invalidate the decree. While Bullock's conduct toward his wife was extremely reprehensible and arouses a natural feeling of sympathy for her misfortunes, that fact has no bearing upon the present issue, which is not between Bullock and his divorced wife, both of whom are now deceased, but between appellants and Bullock's innocent children contending for shares in the trust estate.

By the Indiana Act of March 10, 1873, ch. 43, §6, p. 107, it was provided that a party against whom a judgment of divorce is rendered without other notice than publication in a newspaper may at any time within two years after the rendition of such judgment have the same opened and be allowed to defend on the granting of the divorce, the allowance of alimony and the disposition of property. Bullock's wife, although she admittedly knew of the decree against her within a few days after it was rendered, made no attempt to avail herself of this statutory right, but in July, 1929, she filed a bill in equity against Bullock in the Municipal Court of

Philadelphia setting forth the fact of the decree, alleging that she had had no notice of the proceedings while they were pending, claiming that Bullock had deserted her and that she was entitled to support, and asserting that they had agreed through their respective counsel that a decree might be entered directing him to pay her $1,000 per annum for ten years out of the income from the trust estate. The Municipal Court entered a decree accordingly and those payments were subsequently made.. The Bullocks say that the settlement thus agreed upon was merely to make up for the support which Bullock had failed to furnish his wife prior to his obtaining the divorce; the Skinners, on the other hand, assert that the settlement and the decree entered thereon constituted a virtual admission by him that the divorce had not been validly obtained and was ineffective and void. But just as the failure of the wife to institute proceedings in Indiana to upset the decree within the two years after it had been granted could not, as against appellants, effect its validation if in fact it was void for want of jurisdiction over her, so the order for support entered in the Municipal Court could not invalidate the decree of divorce if in fact valid when rendered, and Bullock could not, by acquiescence in the support order, impair the rights of his children which had previously vested by reason of the decree of divorce and his subsequent marriage.

The divorce decree was entered on March 8, 1929; on the following May 20th Bullock and Margaret Omlor were married. The Indiana Act of March 10, 1873, ch. 43, §6, p. 107, previously referred to, provided that it should not be lawful for a party obtaining a judgment of divorce without other notice than publication in a newspaper to marry again until the expiration of two years after the rendition of such judgment, this prohibition to be stated in the decree of the court. In the decree of March 8, 1929, no such restriction was expressed, but, in any event, it was held in *Mason v. Mason*, 101 Ind.

25, that where such a divorce is obtained, and the party in whose favor it was granted does marry within the forbidden two years, such marriage is not absolutely void but merely voidable and becomes unassailable if within the two years the party against whom the divorce was obtained does not initiate any proceedings to open the decree.

By ch. 27, §9, Revised Statutes of Indiana, Vol. 1, 1852, p. 248, it was provided that "If a man shall marry the mother of an illegitimate child, and acknowledge it as his own, such child shall be deemed legitimate." There was testimony, not only by Margaret Omlor herself but by Bullock's attorney, that Bullock did acknowledge his children by Margaret Omlor as his own. They were thus legitimated according to the law of Indiana and it is well established that the status of legitimacy is created by the law of the domicile of the parent whose relationship to the child is in question: Restatement, Conflict of Laws, §137; *McCausland's Estate,* 213 Pa. 189, 62 A. 780; *Moretti's Estate,* 16 D. & C. 715; *Miller v. Miller,* 91 N. Y. 315; *Olmsted v. Olmsted,* 190 N. Y. 458, 464, 465, 83 N. E. 569, 570. Our own statutes provide that illegitimate children are legitimated by the subsequent marriage of their parents: Act of May 14, 1857, P. L. 507; Act of June 7, 1917, P. L. 429, §15 (d).

The testator's will provided that upon the death of any nephew or niece his or her share should go to his or her issue then living; that provision is to be construed as meaning that if, at the time of a nephew's or niece's death, there should be both children and grandchildren of such nephew or niece living, the children should take in the first instance to the exclusion of the grandchildren,—that is, the "issue" of the nephew or niece should take their life interests per stirpes instead of the children and grandchildren taking per capita: *Mayhew's Estate,* 307 Pa. 84, 160 A. 724. The interests of the Bullock children, therefore, did not accrue until the death of their father in 1943, and their legitimation

had occurred fourteen years previous to that time. While testator, by his bequest to the issue of the nephews and nieces, is presumed to have intended only lawful and not illegitimate issue (*Appel v. Byers*, 98 Pa. 479, 481; *Bealafeld v. Slaughenhaupt*, 213 Pa. 565, 62 A. 1113; *Kemper v. Fort*, 219 Pa. 85, 94, 67 A. 991, 995), the requirement of legitimacy, as far as the rights of the Bullock children in this controversy are concerned, is met by their having been legitimated before their life estates in the trust became operative: *Miller's Appeal*, 52 Pa. 113; *Seitzinger's Estate*, 170 Pa. 500, 528, 32 A. 1097, 1099.

The decree awarding one-third of the income to Mary G. Skinner, one-third to George W. T. Snare, and, of the remaining one-third, so much as accrued in the lifetime of George A. Bullock to the personal representative of his estate and the balance in equal shares to the seven surviving children of George A. Bullock and Margaret Omlor Bullock, is affirmed; costs to be paid by appellants.