## George Estate

*Nelson P. Fegley*, for accountant.

*Brunner & Conver*, for Anna Wieand.

*Duffy, McTighe & McElhone*, for Joan Rufe Downey.

TAXIS, P. J., June 21, 1955.—The first and final account of Montgomery Norristown Bank and Trust

Company (formerly Norristown-Penn Trust Company), substituted trustee, was examined and audited by the court on May 6, 1955.

The account shows a balance of principal for distribution of $17,864.37, and a balance of income for distribution of $58.66.

The reason or purpose of the filing of the account is the death of George L. Rufe, life beneficiary. He died on January 28, 1954, and his death terminated the trust.

Decedent having died prior to the enactment of the direct inheritance tax, there is no transfer inheritance tax due the Commonwealth.

Jacob W. George died on January 6, 1903, leaving a will which provided that the residue of his estate be placed in trust for his daughter, Euphemia Rufe, and upon her death the income be paid to her children for life and upon the death of her children the principal be distributed to his "great-grandchild or children".

Euphemia Rufe predeceased testator, survived by her only son, George L. Rufe.

The following facts were stiuplated by counsel for the respective parties. George L. Rufe, the life beneficiary of the trust, entered into a legal marriage with his first wife on September 13, 1896, and was divorced from her on November 25, 1908. Anna Weiand was born of that marriage and is still living and sui juris. George L. Rufe married his second wife, Mary Agnes Rufe, in 1910. Howard Rufe and George J. Rufe were born of that marriage. Both Howard and George J. Rufe are alive and sui juris. Howard, or Howard Francis Rufe, assigned his interest in this estate to Mary Agnes Rufe by assignment dated March 8, 1951.

On September 31, 1927, at Defiance, Ohio, George L. Rufe went through a marriage ceremony with Winona Garman, even though his second wife, Mary

Agnes Rufe, was still alive and he had not been divorced. It is conceded that this attempted marriage to Winona Garman was bigamous. However, George and Winona lived in Ohio and cohabited as man and wife until April 30, 1930, at which time they separated.

Prior to the separation and as a result of the cohabitation, a child was born, known as Joan Rufe (now, by marriage, Joan Rufe Downey), in the State of Ohio, on October 31, 1928, and that child now claims a share of the principal of the trust as a great-grandchild of testator. Winona G. Rufe was granted a divorce from George L. Rufe on August 9, 1935, in the court of common pleas at Defiance, Ohio, on the ground of desertion.

It is conceded that Anna Weiand, Howard Rufe and George J. Rufe, are great-grandchildren of testator and entitled to a distributive share. They contend that Joan Rufe Downey is an illegitimate child of George L. Rufe because she was born of a bigamous marriage and, therefore, the principal of the trust should be awarded in equal one-third shares to them. Mrs. Downey contends, however, that under the law of the State of Ohio (which she argues is applicable) she is a legitimate child, and consequently, the principal of the trust should be divided into one-fourth equal shares, and that she is entitled to one such share. The question for determination is, therefore: Is Joan Rufe Downey a great-grandchild of Jacob W. George, testator?

The first matter to be considered is whether or not the statute law of the State of Ohio controls the determination of the status of Mrs. Downey. For, if it does, then it is conceded that Mrs. Downey would be entitled to a distributive share, even though under the law of Pennsylvania, she would not take. The parties have stipulated that under the statutory law of the State of Ohio which is pertinent to this inquiry, Mrs.

Downey is the legitimate child of a bigamous marriage between George L. Rufe and Winona Garman Rufe, and that the law of Ohio in respect thereto is accurately summarized as follows:

"When a man has children by a woman and afterward intermarries with her, such issue, if acknowledged by him as his children, will be legitimate. *The issue of parents whose marriage is null* in law shall nevertheless be legitimate": §2105.18, Ohio Revised Code. (Italics supplied.)

The parties have stipulated also that in interpreting such statute, the courts of the State of Ohio have determined that this provision is applicable to the issue of marriages null because bigamous, and that children born of such a union are legitimate.

In Thorn Est., 353 Pa. 603, 611, it was stated that:

". . . the status of legitimacy is created by the law of the domicile of the parent whose relationship to the child is in question: *Restatement, Conflict of Laws,* §137; *McCausland's Est.,* 213 Pa. 189, 62 A. 780; *Moretti's Est.,* 16 D. & C. 715; *Miller v. Miller,* 91 N. Y. 315; *Olmsted v. Olmsted,* 190 N. Y. 458, 464, 465; 83 N. E. 569, 570."

There is little doubt that George L. Rufe was domiciled in Ohio in 1928 when Mrs. Downey was born, and it is the domicile of that parent at the date of birth which controls, for it is that moment when the status is created. Cf. Beale, Conflict of Laws, §138.1, p. 705.

It would seem, also, that the status of Mrs. Downey, thus having been established as legitimate under the law of the place where she was born, is one which Pennsylvania ought to recognize unless, by such recognition, some positive law of this State would be violated or such recognition would offend or contravene our established public policy or offend against good morals.

Pennsylvania has no law upon the subject of legitimacy exactly to the same effect as that of the Ohio statutes quoted above, but such statutory void does not furnish the test to be applied in determining whether recognition should be given to the status acquired under the laws of another jurisdiction. The real inquiry is whether or not there is any important matter of public policy here prevailing which would be contravened by such recognition.

It is conceded that Pennsylvania has no positive statutory law which would be violated by recognition of the Ohio status of Mrs. Downey.

Preliminarily, it must be observed that a recognition of the legitimacy of Mrs. Downey does not per se involve a recognition of the lawfulness of the acts of the parents or approve of their wrongdoing. The Ohio statute certainly does not condone the parents' conduct. A fortiori a recognition of the status of a child born of a bigamous union does not involve a recognition of the lawfulness of the conduct of the parents. The statute concerns itself simply and exclusively with the rights of innocent children. It is important to observe also that Ohio law deals not with legitimizing illegitimates but, on the contrary creates, at birth, a status of legitimacy. The claim, therefore, of Mrs. Weiand and the other residuary legatees, that Pennsylvania should not recognize those who were born legitimate as determined by the law of the place of the domicile of their birth, is without merit.

The legislation of Ohio in question differs from the law of Pennsylvania in degree rather than in kind. It is similar in kind in that it makes legitimates of children born out of lawful wedlock and recognizes an inheritable quality in them. Is its difference in degree such as to make it so offensive to good morals or public policy that we are called upon to say that we

should withhold recognition of the status which Mrs. Downey had at birth and has enjoyed in the State of her nativity? I think not.

There is a larger and more far-reaching consideration of public policy involved and one which should make us hesitate to ignore the status acquired by Mrs. Downey at birth in Ohio except under the pressures of much stronger considerations than any existing in this case, viewed in whatever aspect. The matter of personal status, lawfully acquired in one jurisdiction, is a thing which ought not to be lightly interfered with or ignored. Minor, Conflicts of Laws, page 212, in discussing this subject states:

"It would be in the highest degree inconvenient if a status of this sort, once established, were liable to fluctuation and change with time, place, or circumstance. Hence, when these relations are once established by the proper law, they remain, in general, fixed and unchangeable, into whatsoever countries the parties may wander, or wheresoever the question may arise."

That uniformity of status should follow a person is of prime importance, and should not be subject to the vagaries of shifting conditions, save under circumstances which furnish strong and cogent reasons for such a course. Cf. Moore et al. v. Saxton et al., 90 Conn. 164, 96 Atl. 960; Green et al. v. Kelley et al., 228 Mass. 602, 118 N. E. 235.

I therefore find that Joan Rufe Downey is a great-grandchild within the meaning of the will and entitled to a one-fourth distributive share of the principal for distribution.

It should be observed that this decision is not based upon a recognition of the right of Ohio to usurp the duty of this court to inquire into and apply the law of this State and to comply with the directions of testator. Cf. Bregy, Wills Act, §14 (7), page 3202.

The balance of principal for distribution is awarded in equal one-fourth shares to Anna Weiand, George J. Rufe, Mary Agnes Rufe, assignee of Howard Francis Rufe, and Joan Rufe Downey.

The account is confirmed, and it is ordered and decreed that Montgomery Norristown Bank and Trust Company (formerly Norristown-Penn Trust Company), substituted trustee, as aforesaid, forthwith pay the distributions herein awarded.

And now, June 21, 1955, this adjudication is confirmed nisi.